In the Matter of The SEARCH OF: The FLORILLI CORPORATION.

No. 4–98–M–30156.

United States District Court, S.D. Iowa.

Nov. 10, 1998.

Richard L. Richards, Assistant U.S. Attorney, Des Moines, Iowa, for plaintiffs.

David Shinkle, Des Moines, IA, Anthony J. McMahon, Bethesda, Maryland, for defendants.

## ORDER ACCEPTING REPORT AND RECOMMENDATION AND RULING DENYING MOTION

VIETOR, Senior District Judge.

On September 24, 1998, Magistrate Judge Walters filed a report and recommendation in which he recommends that Florilli's motion to quash search warrant be denied. The parties were granted to and including October 15, 1998, within which to file objections to the report and recommendation, and received an additional extension to October 23, 1998. Florilli has filed objections to the Magistrate Judge's report and recommendation, and the government has filed a response to Florilli's objections.

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

28 U.S.C. § 636(b)(1).

I have made the required de novo review of the record, and I accept the report and recommendation of the Magistrate Judge.

Florilli's motion to quash search warrant is **DENIED** for want of an adequate basis to exercise pre-indictment equitable jurisdiction. This ruling is without prejudice to Florilli to file a motion to suppress on the same and other grounds in the event criminal proceedings are instituted.

## REPORT AND RECOMMENDATION ON FLORILLI'S MOTION TO QUASH SEARCH WARRANT

WALTERS, United States Magistrate Judge.

The above resisted motion is before the Court following hearing. The legal issue presented, whether a Special Agent of the Inspector General of the Department of Transportation exceeded her authority in conducting a criminal investigation and applying for the search warrant in question, is also involved in Florilli's separate application for order directing return of material seized which the Court partially addressed by ruling entered August 25, 1998. The resolution of the motion to quash also finally resolves that application.

*Jurisdictional Basis.*

There is a predicate issue about the jurisdictional basis for the motion to quash. The search warrant in question resulted in the seizure of 270 bankers' boxes filled with Florilli's business records. There is no express procedure to quash a search warrant after its execution other than a motion to suppress under Fed.R.Crim.P. 12 or a motion for return of property under Fed.R.Crim.P. 41(e). A motion to suppress is not ripe until there has been an indictment, and no indictment has been returned against Florilli. "A person aggrieved by unlawful search and seizure" may move for return of property seized, Fed.R.Crim.P. 41(e), but if criminal charges have not been filed the Eighth Circuit has held it is more appropriate to treat the motion as a suit in equity. *See Black Hills Inst. of Geological Research v. United States Dep't of Justice,* 967 F.2d 1237, 1239 (8th Cir.1992).

The present circumstances are not much different than those in *In the Matter of the Search of 4801 Fyler Ave.,* 879 F.2d 385, 386–

87 (8th Cir.1989), *cert. denied sub nom., Kiesel Co., Inc. v. Householder,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990) (hereinafter *Kiesel*) in which agents of the FBI and the Environmental Protection Agency seized 80 to 100 boxes of records from the Kiesel Company in executing a search warrant. No indictment or other proceeding had been instituted. Kiesel brought a motion for return of property under Fed. R.Crim.P. 41(e). The Eighth Circuit concluded the motion was properly considered as instituting an equitable proceeding rather than one under the rule. *Id.* at 387. Though the *Kiesel* court observed the motion was filed before "any suggestion of criminal proceedings" thus inferentially indicating return of an indictment was not necessarily a litmus requirement, it seems apparent from reading *Kiesel* and *Black Hills* together that unless the investigation has proceeded beyond the execution of a search warrant to the point that criminal proceedings are imminent, the subject of a search warrant who wants return of the property is required to call upon the Court's equitable jurisdiction. *Id.; see* 967 F.2d at 1239.[1]

 Regardless of how it is labeled, Florilli's motion challenges the legality of the seizure and seeks return of the seized items before any criminal proceedings have been instituted or are on the horizon. It is therefore cognizable only to the extent it is appropriate for the Court to exercise equitable jurisdiction to grant relief. Such jurisdiction is to be exercised "cautiously", *Black Hills,* 967 F.2d at 1239, and "only upon a showing of callous disregard of the Fourth Amendment, irreparable injury if relief is not granted, and lack of an adequate remedy at law." *Kiesel,* 879 F.2d at 387 (citing *Pieper v. United States,* 604 F.2d 1131, 1133 (8th Cir. 1979)). I believe the "callous disregard" element should be broad enough to include disregard for the requirements of Rule 41 or the authority of the investigator which is the thrust of Florilli's motion.

Because the motion to quash is distinguishable from a motion to suppress only because criminal proceedings have not been institut-

ed, I have treated it as having been referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See In the Matter of the Seizure of One White Jeep Cherokee,* 991 F.Supp. 1077, 1079 (S.D.Iowa 1998) (in which the same procedure was followed concerning a pre-indictment request for return of property). For the reasons indicated below, I conclude that Florilli has not shown the search and seizure was in callous disregard of the Fourth Amendment, statutory authority, or rule, nor has it shown a risk of irreparable injury or the inadequacy of any remedy of law. Accordingly, I recommend that the motion to quash be denied without prejudice to renewal as a motion to suppress if criminal proceedings are instituted.

*Background.*

Megan Murray is a Special Agent of the office of Inspector General of the U.S. Department of Transportation. Florilli is an interstate motor carrier subject to federal motor carrier safety regulations administered by the Office of Motor Carriers (OMC) of the Federal Highway Administration. For the past year Murray has been conducting a criminal investigation of Florilli with respect to alleged violations of federal highway safety laws and false statements allegedly made in connection with them. The investigation has been probing possible violations of 18 U.S.C. §§ 371, 1001, 1341 and 1343 as well as criminal penalty provisions of the Commercial Motor Vehicle Safety Act, 49 U.S.C. §§ 521, 522, 524 and 526. On June 26, 1998, Agent Murray, in the company of Assistant U.S. Attorney Richard Richards, presented an application and affidavit for a search warrant to me. Murray was the affiant. The application was granted, the warrant was executed on June 29, 1998 and numerous business records were seized.

*Analysis.*

a. Callous disregard of the law—The Inspector General Act.

Florilli argues that Murray's investigation has usurped a program operating responsibility of the OMC and therefore exceeds the Inspector General's statutory authority set

---

1. Judge Zoss recently explored the state of the law on this subject in *In the Matter of the Seizure*

*of One White Jeep Cherokee,* 991 F.Supp. 1077, 1080–82 (S.D.Iowa 1998).

forth in the Inspector General Act of 1978. 5 U.S.C. app. 3. The OMC, not the Inspector General, has program responsibility for investigating motor carriers for compliance with federal highway safety laws.

■ The Inspector General Act created offices of Inspector General in most executive departments and agencies, including the Department of Transportation. The purpose of the Act was to create an independent officer, removable only by the President, whose core responsibilities include conducting audits and investigations relating to programs and operations of each department or agency and the prevention and detection of "fraud and abuse" in such programs and operations. 5 U.S.C. app. 3 § 2(1), (2)(B); see id. § 3 (appointment and removal provisions). Accordingly, "Congress conferred very broad audit, investigatory, and subpoena powers on each Inspector General, as an independent and objective unit of the department or agency, to help promote efficiency and prevent fraud, waste, abuse, and mismanagement in federal government programs...." *Winters Ranch Partnership v. Viadero*, 123 F.3d 327, 330 (5th Cir.1997). Among other things, each Inspector General is expressly authorized "to make such investigations and reports relating to the administration of the programs and operations of the applicable [department] as are, in the judgment of the Inspector General, necessary or desirable." 5 U.S.C. app. 3 § 6(a)(2). If in the course of his or her duties the Inspector General discovers reasonable grounds to believe there has been a violation of federal criminal law, the Inspector General is to report it to the Attorney General. *Id.* § 4(d).

The only relevant limitation on the Inspector General's broad powers is found in the transfer provisions of section 9 of the Act. That section transfers the functions of specific offices in each department to the Inspector General for that department. In the case of the Department of Transportation, the functions of the former "Office of Investigations and Security" and "Office of Audit" were transferred as well as those of the "Investigations Division and the External Audit Division ·of the Office of Program Review and Investigation, Federal Highway Administration." *Id.* § 9(a)(1)(K). Section 9 contains a residual provision which allows the head of a department or agency to transfer other functions, powers or duties to the Inspector General consistent with the purposes of the Act subject to the limitation "that there shall not be transferred to an Inspector General under [the residual provision] program operating responsibilities." *Id.* § 9(a)(2). Florilli focuses on this language to assert that motor carrier safety compliance is a program responsibility of the OMC which Special Agent Murray has effectively and improperly performed by her investigation.

Florilli relies on the Fifth Circuit's decision in *Burlington Northern RR Co. v. Office of Inspector General*, 983 F.2d 631 (5th Cir. 1993). *Burlington Northern* concerned the enforceability of a subpoena duces tecum issued by the Inspector General of the Railroad Retirement Board. *Id.* at 633. The case did not involve a criminal investigation. The Railroad Retirement Board had never exercised its power to investigate or audit railroads to determine if they were accurately reporting and properly paying taxes which funded retirement and survivor benefit and unemployment sickness benefit programs administered by the Board. *Id.* at 633–34. Instead, the Board had relied on the Internal Revenue Service. *Id.* Concerned that taxes were being underreported and underpaid, the Inspector General "began auditing the railroad companies himself." *Id.* at 635. The court held that the Inspector General Act did not authorize an Inspector General to take over the agency's regulatory compliance investigations or audits which were "within the authority of the agency itself." *Id.* at 642.

> Thus, as a general rule, when a regulatory statute makes a federal agency responsible for ensuring compliance with its provisions, the Inspector General of that agency will lack the authority to make investigations or conduct audits which are designed to carry out that function directly.

*Id.* at 642. In so holding, ·the Fifth Circuit relied on the transfer of functions limitation in section 9(a)(2) as well as legislative history. It reasoned that if an Inspector General

could assume an agency's regulatory compliance functions, the IG's essential oversight functions of "combating fraud, abuse, waste and mismanagement" in federal agencies and departments would be compromised. The Fifth Circuit also relied on a March 9, 1989 memorandum of the Justice Department's Office of Legal Counsel which responded to a question concerning the extent to which the Inspector General of the Department of Labor could conduct investigations within the department's regulatory jurisdiction concerning private individuals and entities that did not receive government funds. The Justice Department opined that the Inspector General "has an oversight rather than a direct role in investigations conducted pursuant to regulatory statutes: he may investigate the Department's conduct of regulatory investigations but may not conduct such investigations himself." *Id.* at 642–43.

The Fifth Circuit stressed the limited nature of its holding which it said was based only on "the district court's findings concerning the *nature* of this particular audit of Burlington Northern." *Id.* at 643 (emphasis original). The court suggested the Inspector General could well have authority to investigate or audit railroad compensation reporting where the Inspector General "suspects fraud and abuse on the part of [railroad] employers." *Id.*

The Fifth Circuit visited the scope of the Inspector General's authority again in *Winters Ranch, supra. Winters Ranch* involved administrative subpoenas duces tecum issued by the Inspector General of the Department of Agriculture as a part of the Inspector General's plan to investigate and audit the Consolidated Farm Service Agency's implementation of payment limitation and eligibility requirements for federal wool and mohair support programs. 123 F.3d at 328–29. The Inspector General selected six price support recipients and one of them balked at providing information responsive to the subpoenas on the basis that the investigation was ultra vires the Inspector General's statutory authority. In rejecting the challenge, the Fifth Circuit took pains to stress again the limited scope of the *Burlington Northern's* holding. It pointed out that a significant distinguishing feature was that in *Burlington Northern*

the Inspector General had adopted a "long term, continuing plan to assume the agency's primary operating responsibilities" whereas the Inspector General in *Winters Ranch* was spot checking the records of selected producers for a limited period. *Id.* at 335–36.

 I do not believe Florilli's ultra vires challenge to the search warrant satisfies the callous disregard element for the exercise of the Court's equitable jurisdiction. First, the case law support for it is doubtful. *Burlington Northern* is not very helpful to Florilli. Special Agent Murray has conducted a criminal investigation the purpose of which is to ascertain whether crimes have been committed, not secure regulatory compliance. *Burlington Northern*, 983 F.2d at 643 (quoting the Office of legal Counsel as defining regulatory investigations as those having "as their objective regulatory compliance by private parties.") The record is far short of establishing that her investigation is part of a "long-term, continuing plan" whereby the Inspector General has taken over the OMC's routine safety compliance review responsibility. In fact, compliance reviews of Florilli by the OMC form a part of the basis for the search warrant. Florilli has information, and Murray agreed, that the Inspector General is conducting or has conducted about thirty-five criminal investigations of trucking companies. Florilli believes the Inspector General's staff has worked hand-in-glove with compliance officers in conducting them. Thirty-five criminal investigations does not make the case that the Inspector General has taken over OMC's nationwide compliance review function. Similarly, that agents of the Inspector General rely on information produced from compliance reviews, work with OMC agents and investigators, or even duplicate OMC's investigative techniques, does not establish a usurpation of program responsibilities. *See Winters Ranch*, 123 F.3d at 327.

Beyond *Burlington Northern*, the specific authority of the Inspector General of the Department of Transportation has to be looked to. Textually, the specific transfer provisions in paragraph (a)(1) of section 9 trump the limitation in the residual transfer provision of paragraph (a)(2). In a Decem-

ber 19, 1989 response to a letter from the Department of Transportation Inspector General inquiring about his authority "to investigate allegations of fraud against DOT programs and operations by private parties who do not receive federal funds," Assistant Attorney General William P. Barr, writing for the Justice Department's Office of Legal Counsel, stated that under section 9(a)(1)(K) of the Act the Inspector General possessed "the same broad authority to investigate fraud against DOT that the various investigative units that the Act transferred to your Office possessed at the time of the transfer." Government Ex. F. Barr continued that it was understood by Congress and the DOT that section 9(a)(1)(K) "had the effect of transferring substantially all existing DOT investigative responsibilities to the DOT–IG." *Id.* at 2. This conclusion was supported by a post-enactment memorandum of then Secretary of Transportation Brock Adams in which he instructed that (except for two discrete programs not pertinent here) "there should be no auditor or criminal investigator personnel employed in DOT other than within the Office of Inspector General." Finally, the Office of Legal Counsel reviewed the mission statements for the transferred investigative units and found they appeared to be broad enough to include the investigation of "false statements and similar fraud against DOT programs or operations." *Id.* at 3.

Florilli responds that one of the transferred investigative units identified in the Office of Legal Counsel's letter was the "Investigations Division and the External Audit Division of the Office of Program Review and Investigation, Federal Highway Administration" which dealt only with the federal aid highway program and not with motor carrier regulatory compliance. The mission statements of the other transferred units are not before the Court. However, from the present record it appears that the Department and the Justice Department have viewed the Inspector General's Act as transferring whatever pre-Act criminal investigative functions there were to the Inspector General. This would include the authority to investigate criminal false statements and fraud in connection with a motor carrier's compliance with federal safety regulations. I am not convinced at this point that the record supports Florilli's ultimate proposition that only the Attorney General may conduct criminal investigations of trucking companies for acts committed in connection with violations of federal safety regulations.

It follows there is no basis to question the good faith of Agent Murray's belief that she was authorized to conduct a criminal investigation of Florilli. By regulation Murray is a federal law enforcement officer specifically authorized to request the issuance of a search warrant. 28 CFR § 60.2(i). Her application was supported by a detailed nineteen-page affidavit. It reviewed the results of previous compliance reviews of Florilli and interviews with nine individuals, most of whom were former drivers or other employees of Florilli, in support of Murray's allegation that there was probable cause to believe there had been criminal violations of the provisions of Title 18 and Title 49 of the United States Code described previously. She presented her affidavit to the U.S. Attorney, who reviewed it and accompanied her to present it to me. A finding of probable cause was made and the warrant was issued. In these circumstances, the United States Attorney was also a Rule 41 requestor of the search warrant, and there is no doubt about the U.S. Attorney's authority to obtain a warrant. *See United States v. Parker,* 836 F.2d 1080, 1083 (8th Cir.1987); *United States v. Gatewood,* 786 F.2d 821, 824–25 (8th Cir. 1986). There is, therefore, no basis to conclude the government has proceeded in callous disregard of Florilli's rights secured by constitution, statute or rule. *See Kiesel,* 879 F.2d at 388.

b. Irreparable injury and adequate remedy.

 The irreparable injury argued by Florilli is in the harm to its business from being deprived of essential business documents. Florilli had a legitimate point in this regard, and it was addressed in the August 25, 1998 Partial Ruling on Application for Order Directing Return of Material Seized. The government was directed to return certain categories of important documents by September 14, 1998 and recent correspon-

dence indicates it evidently has complied. All other documents, consisting chiefly of archival material, were to be made available to Florilli at reasonable times for inspection and copying. Though not expressly argued, there is also the potential for harm from the stigma of being indicted should that come to pass. The mere possibility of such harm, however, is not sufficient to require resort to equitable remedies prior to the institution of criminal charges. *Id.* at 389. Finally, if criminal proceedings are instituted, Florilli has an adequate remedy to challenge the search through a motion to suppress.

*Recommendation and Order.*

Viewing the motion to quash as a request for the Court to exercise pre-indictment equitable jurisdiction to determine the legality of the search and direct return of the seized property, I recommend that it be denied for want of an adequate basis to exercise such jurisdiction. The ruling should be without prejudice to Florilli's opportunity to bring a motion to suppress on the same and other grounds in the event criminal proceedings are instituted.

IT IS ORDERED that the parties have to and including **October 15, 1998** to file written objections, pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *Thompson v. Nix,* 897 F.2d 356 (8th Cir.1990). Such extensions will be freely granted. Any objections filed must identify the specific portions of the Report and Recommendation to which the objections are made, and set forth the basis for such objections. *See* Fed.R.Civ.P. 72; *Nix,* 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Nix,* 897 F.2d at 357.

IT IS FURTHER ORDERED that the Clerk will refer this Report and Recommendation to a District Judge for consideration.

IT IS SO ORDERED.

September 24, 1998.