**TRUCKERS UNITED FOR SAFETY, et al., Plaintiff,**

v.

**Kenneth MEAD, Inspector General of the Department of Transportation, Defendant.**

**Civ. No. 98–2793(TFH).**

United States District Court, District of Columbia.

March 26, 2002.

---

Anthony Joseph McMahon, Bethesda, MD, for plaintiff.

Halsey B. Frank, U.S. Attorney's Office—Maine, Portland, ME, Eric Mark Jaffe, U.S. Attorney's Office, Washington, DC, for defendant.

THOMAS F. HOGAN, Chief Judge.
### *MEMORANDUM OPINION*

Pending before the Court is plaintiffs' motion for fees and expenses under the

Equal Access to Justice Act ("EAJA") 28 U.S.C. § 2412(d). Plaintiffs seek reimbursement for their fees and expenses incurred in successfully challenging as *ultra vires* specific acts of the Department of Transportation's Office of Inspector General ("DOT OIG"). Having considered plaintiffs' motion, defendant's opposition thereto, and plaintiffs' reply, the Court will grant plaintiffs' motion.

## Background

On November 17, 1998, Truckers United for Safety ("TUFS"), a nonprofit organization of motor carriers, and the individually named companies, filed suit in this Court alleging that the DOT OIG lacked legal authority to engage in the particular compliance review investigations conducted in conjunction with the DOT's Office of Motor Carriers ("OMC"). Plaintiffs sought a preliminary injunction and declaratory relief because, they argued, the DOT IG was not authorized to engage in DOT operations, specifically criminal investigations of standard compliance with federal motor carrier safety regulations. Plaintiffs also sought the return of any seized materials that had not already been returned by the Government. Defendant filed a motion for summary judgment, asserting that TUFS lacked standing and that the DOT OIG acted within its authority in authorizing the investigations.

On March 1, 2000, this Court granted defendant's motion to dismiss the organizational plaintiff, granted defendant's motion for summary judgment denied plaintiffs' motion for class certification, and denied plaintiffs' motion for a preliminary injunction. This Court found that the Inspector General Act did not authorize the DOT IG to conduct investigations into motor carrier compliance. As a result the IG had no authority to search plaintiffs' premises or seize their records. However, this Court found that the Mo-

tor Carrier Safety Improvement Act of 1999 ("MCSIA"), signed into law subsequent to the filing of plaintiffs' action, amended the Inspector General Act ("IGA"), and constituted a new grant of authority broad enough to encompass the kind of investigations at issue here. Although the OIG did not have the authority to investigate plaintiffs as part of a compliance review in 1998, the MCSIA had given the IG authority to do so in the future. Plaintiffs appealed.

The Court of Appeals for the District of Columbia Circuit agreed with this Court's analysis of the IGA, but held that the IG violated the IGA when he conducted the disputed investigations and seizures of plaintiffs records in 1998, and that the MCSIA of 1999 did not retroactively authorize investigations that were *ultra vires* when conducted. The court further held that plaintiffs were entitled to return of records and other property seized from them during the IG's *ultra vires* investigations and seizures. Defendant filed a petition for rehearing on the specific issue of the return of all records—this was denied. On July 5, 2001, plaintiffs filed the instant motion for attorney fees and costs under the EAJA.

## Discussion

The EAJA states as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party ... fees and other expenses, in addition to any costs ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The Government in this case has not challenged whether plaintiffs are in fact a prevailing party or whether they meet the other requirements of the statutes. Nor

has the Government asserted any special circumstances which would make the award unjust or inequitable. As such, the issues before the Court are (I) whether the United States was substantially justified in its position and (II) the amount of fees to be awarded.

## I. Substantially Justified

■ Under the statute, a court shall award "fees and other expenses" to a party that has prevailed in a civil action against an official of the United States acting in his or her official capacity unless the position of the United States was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Government bears the burden of proving that its position, both in the underlying agency action and the arguments defending the action in court, were substantially justified. *See Cinciarelli v. Reagan,* 729 F.2d 801, 806 (D.C.Cir.1984). The Supreme Court has interpreted "substantially justified" to mean, "not justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). This means the Government must prove that the position had "a reasonable basis in law and fact." *Air Transport Association of Canada v. Federal Aviation Administration,* 156 F.3d 1329, 1332 (D.C.Cir.1998) (quoting *Pierce,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). Courts have interpreted this to mean that government bears the burden of demonstrating that both the underlying agency action and the litigation positions were substantially justified. *See Halverson v. Slater,* 206 F.3d 1205, 1208 (D.C.Cir.2000); *Nat'l Assoc. of Mfrs. v. United States Department of Labor,* 962 F.Supp. 191, 196 (D.D.C.1997).

■ In this case, the Court finds that the IG was not substantially justified in its actions, and, therefore, the issue of whether the Government was substantially justified in its litigation position need not be discussed in detail. Further, a court's merits reasoning is not necessarily determinative of the issue of substantial justification and the inquiry into the reasonableness of the Government's position may not be collapsed into antecedent evaluation on the merits. *See Halverson,* at 1208. Therefore, even in cases such as this, where the district court previously accepted the Government's position, or, a portion of that position, and then is reversed, the district court must still determine whether the Government's actions and arguments were substantially justified. *See id.*

The Government claims it was substantially justified in conducting the investigations because (1) the IG had a good faith belief that he had the necessary authority under the IGA to participate with the Federal Bureau of Investigation, and the U.S. Attorney's Office in joint investigations of motor carriers; (2) three different U.S. courts have upheld the Government's position; and, (3) the IG received specific authorization from Congress to Proceed with its investigations of interstate motor carriers pursuant to legislation passed 1999 including the DOT Appropriations Law, Public Law No. 106–69, and the MCSIA (discussed above).

The Court finds that the Government has failed to demonstrate that the IG's actions in this case were substantially justified. First, this Court previously found that the legislative history and structure of the IGA made it plain that Congress did not intend to grant the IG authority to conduct investigations pursuant to regulatory statutes that are the concern of the DOT programs. The Court also found that the Secretary of DOT could not trans-

fer to the IG authority to investigate motor carriers' compliance with federal motor carrier safety regulations. The Court concluded that the IG acted outside the scope of his authority in conducting the contested investigations because he was involved in a routine agency investigation into compliance with motor carrier regulations. The Court of Appeals agreed with this Court's finding that the IG violated the IGA when he conducted the contested investigations and seized plaintiffs' records. Therefore, the Government's arguments that its "good faith belief" equates to substantial justification of its actions and that the decisions of other courts provide substantial justification are without merit. In this case, the record is clear that the IG acted *ultra vires* at the time of the investigations. *See Truckers United for Safety v. Mead,* 251 F.3d 183, 190 (D.C.Cir.2001) ("On the record at hand, there can be no doubt that the IG violated the Inspector General Act when he conducted the disputed investigations and seizures of the appellants records in 1998.").

Second, the Government's arguments that at the time when the IG conducted the criminal investigations, the law was settled in the Government's favor and that its litigation position was substantially justified because three different U.S. Courts have upheld the position is equally unpersuasive. The two cases cited by the Government in support of its "settled law" argument are distinguishable and the Government's reliance thereon is misplaced. In *Adair v. Rose Law Firm,* the IG of the Resolution Trust Corporation ("RTC") sought a motion for summary enforcement of a civil subpoena. The court found that the language of the IGA was expansive enough "to extend the IG's authority beyond investigations of the agency itself to investigations of individuals and entities

outside the agency *involved with the agency's programs.*" 867 F.Supp. 1111, 1115 (D.D.C.1994) (emphasis added). In that case, the Rose Law firm was in essence a contractor to the RTC as it had entered service agreements with the RTC to provide legal services with respect to a number of failed thrift institutions. The other case, *United States v. Hunton & Williams,* 952 F.Supp. 843 (D.D.C.1997), also involved the enforcement of a subpoena by the RTC against a contractor to the RTC.

There is nothing in either opinion that suggests the IG authority should extend to criminal investigations which are at the heart of an agency's general compliance enforcement responsibilities. In the case at bar, plaintiffs were not contractors to the DOT but were being investigated by the DOT's OMC. The DOT engaged the IG to use its purported search and seizure authority to improperly obtain plaintiffs business records. On the facts of this case, the "settled law" of *Rose Law Firm* and *Hunton & Williams,* does not demonstrate that the Government's position was substantially justified.

The Government's reliance on *In re Search of Florilli Corp.,* 33 F.Supp.2d 799 (S.D.Iowa 1998), as "supplement[ing] the Defendants' belief that it's [sic] actions were substantially justified" is also misplaced. First, *Florilli* was decided on November 10, 1998, a mere 7 days before plaintiffs in this case filed their complaint. On that fact alone, the Court does not see how this supports the Government's position that it was substantially justified in its actions at the time of the contested compliance investigations. To the extent the Government offers *Florilli* in support of its argument that its *litigation* position was substantially justified, while the Court does not find this persuasive,[1] the Court

---

**1.** The Government also acknowledges con- flicting authority in *In re The Search of North-*

need not address this where, as here, the Court finds that the record is clear that the IG did not possess the authority under the IGA to conduct the contested compliance investigations.

The Government's third argument that it was substantially justified also fails. The Government argues that the passage of the MCSIA in 1999 and the DOT Appropriations Law, *supra*, are evidence that it was substantially justified in its position that it had authority to investigate the plaintiffs. As to the MCSIA of 1999, the Court of Appeals found error in relying on this for a retroactive grant of authority and specifically cited the legislative history pointed to by the Government as insufficient. The Court of Appeals stated:

> This sparse piece of legislative history cannot carry the day for the IG.
>
> Prior to the passage of s 228 [of the MCSIA], the statutory and legal framework defining the IG's authority focused on the IG's role as an independent and objective investigator of fraud and abuse. These responsibilities contrasted with the responsibilities delegated to other offices in the DOT which were in charge of implementation and enforcement of the motor carrier safety regulations. Within this institutional framework the IG was not authorized to engage in ordinary compliance reviews, even those potentially implicating criminal punishments.

*Truckers,* 251 F.3d at 190. This legislative history is equally unpersuasive in this Court's evaluation of substantial justification. The language of the DOT Appropriations Law also does not demonstrate that the Government was substantially justified

in its position where the statutory and legal framework of the IG's authority were clearly established at the time of the contested investigations.

In summary, the Court finds that the Government has not meet its burden in showing the its position was substantially justified. While the Government correctly points out that a reversal at the appellate level should not be held against the Government when awarding fees under the EAJA, see, e.g. *Broad Ave. Laundry and Tailoring v. United States,* 693 F.2d 1387 (Fed.Cir.1982), where the record is clear that the IG did not have the authority at the time of the contested investigation—as is clear from this Court's opinion and that of the Court of Appeals—the Government has not demonstrated that it was substantially justified in its actions. Therefore, plaintiffs as the prevailing party are entitled to an award of fees and expenses under the EAJA.

## II. Fee Award

The Court must address the amount of fees requested by plaintiffs. Plaintiffs seek $115,682.24 in costs, fees, and expenses incurred in this litigation. Plaintiffs have provided an itemized statement of fees and expenses to support this request. The Court has reviewed this submission and will accept as reasonable and necessary the fees described as professional services in the amount of $114, 400.50 and costs—copying, filing fees, Federal Express, expert witness, transportation, and messenger service—totaling $1,281.74. Therefore, the plaintiffs are entitled to a total award of $115,682.24. The Court will, however, discuss the contested issue of recovery of attorneys fees above the statu-

---

*land Trucking, Inc.,* Civ. Action No. 98–1822 (PHX–PGR) (D.Ariz. Sept. 22, 1999), which ultimately held that the IG lacked authority to investigate a particular motor carrier. These conflicting findings by other courts are not

sufficient to demonstrate substantial justification of the IG's actions where the record is clear that th IG did not possess the authority under the IGA.

tory maximum—the only contested issue in this case as to the amount of fees and expenses recoverable under the EAJA.

Plaintiffs are seeking an hourly rate of $260 for lead counsel, Anthony J. McMahon, and $135 for Edward M. McClure. These rates are above the statutory maximum established in the EAJA. The EAJA establishes a rate of $125.00 per hour for attorney's fees "unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The Supreme Court in *Pierce* interpreted this language to mean that an hourly rate above the statutory maximum is due to attorneys "having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." 487 U.S. at 572, 108 S.Ct. 2541. Consideration is also given to the level of skill expected of a lawyer commanding the lawyer's usual hourly fee in assessing the hourly rate recoverable under the EAJA. *See Action on Smoking & Health v. C.A.B.*, 724 F.2d 211, 219 (D.C.Cir.1984).

Plaintiffs contend that Mr. McMahon has a usual fee of $280. They seek to recover at a rate of $260 per hour due to the limited availability of qualified attorneys for the proceedings involved. Plaintiffs contend that Mr. McMahon is the only attorney in the United States, so far as is known, to have challenged the activities of the IG in investigating possible criminal conduct by trucking companies. Mr. McMahon gained specialized and detailed knowledge of the Federal Highway Administration ("FHWA") and the detailed regulatory scheme as Chief Counsel of the FHWA from 1985 to 1989 and in his uncompensated bar activities, particularly in his activities in the Transportation Section of the Federal Bar Association. He was also chair of the Committee on Transportation Law on the Transportation Research Board, an arm of the National Academy of Sciences. Plaintiffs claim that through these activities and his experience, Mr. McMahon gained knowledge that the regulatory activities of the IG not only were *ultra vires* but had a negative impact on highway safety.

Plaintiffs contend that Mr. McClure, who served as co-counsel has a usual fee of $200 per hour. Plaintiffs seek a recovery of $135, or $10 above the statutory maximum, based on the increased cost of living in the Baltimore–Washington area and in light of his normal billing rate and experience. Plaintiffs cost of living calculations reflect that $9.40 of the $10 requested increase is based on the higher cost of living in the area. Mr. McClure has been admitted to the bar since 1982.

The Government argues that plaintiffs are not entitled to fees in excess of the statutory cap based on the plaintiffs' contention that there are a limited number of qualified attorneys available. The limited availability provision, they contend, "must refer to attorneys qualified for the proceedings in some specialized sense, rather than just in their legal competence." *Pierce*, 487 U.S. at 572, 108 S.Ct. 2541. Further they argue, justification of higher fees requires that attorneys possess some special skill or distinctive knowledge necessary for the litigation; and, that this Circuit has specifically held that appropriate specialties are ones "requiring technical or other education outside the field of American law." *Waterman Steamship Corp. v. Mar. Subsidy Bd.*, 901 F.2d 1119, 1124 (D.C.Cir.1990). The Government also contends that this Circuit has held that expertise developed from experience, as opposed to specialized training, does not

justify higher fees. *See F.J. Vollmer Co. v. Magaw,* 102 F.3d 591, 598 (D.C.Cir. 1996). Lastly, the Government contend that claims that the case involves complex statutory and regulatory also are not sufficient justification for higher hourly fees.

■ The Court is not persuaded by the Government's arguments. In this case, Mr. McMahon did gain much of his knowledge through his experience as Chief Counsel for the FHWA and in his bar activities. Presumably, this experience and the knowledge acquired could have been acquired by any member of the bar through competent research. Mr. McMahon, however, not only gained his knowledge of the complex regulatory structure through his experience as Chief Counsel for FHWA, he also gained specialized expertise in the safety aspects of the trucking industry and how this interplayed with the regulatory scheme. The Court find this to be a special factor which warrants an award of attorneys fees in excessive of the statutory cap. Mr. McMahon's specialized or distinctive knowledge was critical to the litigation.

Moreover, the Government's claims that "several other attorneys have also challenged, or worked with Plaintiffs' counsel, on the same issues in other district courts," may support rather than refute plaintiffs' contention because it illustrates that there is a limited availability of qualified attorneys. Plaintiffs also point out that in *United States v. David Kristler and Grandson Trucking Inc.,* cited by the Government, Mr. McMahon actually prepared pleadings which were signed by local counsel. The Court finds that McMahon's requested hourly fee of $260 per hour is reasonable in light of the lack of qualified attorney's possessing the specialized knowledge of trucking industry and the technical aspects of its safety in relation to the complex regulatory regime.

As to plaintiffs request for recovery of $135 per hour for attorney Edward M. McClure, the Government does not oppose this request. The Court therefore has no trouble awarding a reasonable request for fees in excess of the statutory cap based on the rise in the cost of living. The Court has been presented with no arguments that lead the Court to question the accuracy of plaintiffs' cost of living figures. Therefore, the hourly rate recoverable for attorney Edward M. McClure will be $135 per the plaintiffs request.

**ORDERED** that plaintiffs are entitled to recover $115,682.24 for fees and expenses incurred in this litigation as described in Exhibit A to plaintiffs' motion.

**SO ORDERED.**

### Conclusion

For the foregoing reasons, the Court will grant plaintiffs' motion for attorneys fees and costs under the Equal Access to Justice Act (28 U.S.C. § 2412(d)). Plaintiffs are entitled to recover $115,682.24. An appropriate Order will accompany this Memorandum Opinion.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that plaintiffs' motion for an award of attorneys' fees and costs under the Equal Access to Justice Act 28 U.S.C. § 2412(d) is **GRANTED.** Accordingly, it is hereby