UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellant,*

v.

JAMES E. SANDERS; NORVELL
PRESTON; DAVID MARTIN,
           *Defendants-Appellees,*

           and

K&C TRUCKING COMPANY,
INCORPORATED, a/k/a Lone Wolf
Transportation, Incorporated, a/k/a
Justin Transportation, Incorporated,
           *Defendant.*

No. 03-4890

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Jackson L. Kiser, Senior District Judge.
(CR-02-125)

Argued: June 4, 2004

Decided: July 29, 2004

Before WIDENER and SHEDD, Circuit Judges, and
David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Reversed and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Thomas Ernest Booth, Criminal Division, Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Sidney Harold Kirstein, Lynchburg, Virginia, for Appellees. **ON BRIEF:** John L. Brownlee, United States Attorney, Sharon Burnham, Assistant United States Attorney, Roanoke, Virginia, for Appellant. John E. Falcone, Lynchburg, Virginia, for Appellee Martin; Joseph A. Sanzone, SANZONE & BAKER, P.C., Lynchburg, Virginia, for Appellee Sanders.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

A federal grand jury indicted K&C Trucking Company ("K&C") and several K&C officials and employees (collectively "K&C") under 18 U.S.C. §§ 371, 1001, and 1002, for one count of conspiracy and seventeen counts of making false statements. The charges arise from K&C's alleged attempt to conceal violations of federal highway safety regulations that limit the hours of service by commercial truckers. Before trial, K&C moved to exclude evidence that the United States had seized pursuant to a search warrant during a search of K&C's business premises. The search warrant had been obtained by a Special Agent of the United States Department of Transportation ("DOT") Office of Inspector General ("DOT-IG" or "IG"). Although the district court concluded that no constitutional violation had occurred, it nonetheless invoked its "supervisory power" and excluded the evidence because it found that the DOT-IG had exceeded his authority under the Inspector General Act of 1978 and had acted in "bad faith." The United States now appeals the exclusion order pursuant to 18 U.S.C. § 3731. For the reasons set forth below, we reverse the exclusion order and remand for further proceedings.

I

The district court found the following facts to be established. In March 1998, the DOT Office of Motor Carriers ("OMC") received a letter from a former K&C employee stating that K&C management required its tractor-trailer drivers to drive more hours than are legally permitted and to submit false driver log books. The former employee also stated that K&C management directed its drivers to transport hazardous materials in an improper manner.

Based on this letter, a DOT official informally requested records from K&C during an on-site inspection at K&C's Rustburg, Virginia, office. K&C refused this request. OMC then issued an administrative subpoena for the production of documents, but K&C refused to comply with this subpoena.

On October 22, 1998, Special Agent Eric Johnson of the DOT-IG submitted to a federal magistrate judge in the Western District of Virginia an application and affidavit for a warrant to search K&C's Rustburg premises and to seize certain documents that Agent Johnson alleged would establish violations of federal safety rules and regulations by K&C and its drivers. The magistrate judge issued the search warrant that day, authorizing law enforcement agents to search the K&C office and all trucks on the premises for certain categories of documents. The following day, approximately forty law enforcement officers, many dressed in "full combat gear"[1] executed the search warrant and seized 103 boxes of documents and several computer records. The officers placed the K&C employees who were at the office that day in an employee kitchen and held them there for at least four hours while the search was conducted. During the search an OMC official stated to K&C employees that the search would not have occurred had K&C complied with the OMC subpoena. The search attracted the attention and presence of some local media, and one news report indicated that reporters had been promised a detailed story from federal agents at another time.

---

[1]From reading the district court's opinions, it appears that the term "full combat gear" refers to bullet-proof vests and sidearms.

On the same day that the magistrate judge issued the search warrant, federal grand jury subpoenas were issued in the Western District of Virginia at the request of an Assistant United States Attorney ("AUSA") for the same documents that were the subject of the search warrant. The grand jury subpoenas directed K&C to produce the subject documents on November 17, 1998. After these subpoenas were served on K&C, discussions between counsel for K&C and the United States confirmed that all documents subject to the subpoenas were in the United States' possession as a result of the search. Consequently, the United States did not require anyone from K&C to appear before the grand jury.

In November 1998, K&C joined a lawsuit in the United States District Court for the District of Columbia to challenge the legality of the search of its office and seizure of its records. That case eventually reached the circuit court of appeals, which examined the scope of the investigative authority of the DOT-IG under the Inspector General Act of 1978 (as it existed in 1998). *See Truckers United For Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001) ("*Mead I*"). The *Mead I* court summarized its decision (in pertinent part) as follows:

> In keeping with its mission to enforce motor carrier safety regulations, the [OMC] initiated compliance review investigations into appellants' record keeping practices. As part of that effort, the [DOT-IG] was engaged to use its purported search and seizure authority to obtain appellants' business records. Under the legal framework in effect at the time of the underlying events, the Inspector General Act of 1978, the Inspector General ("IG") had no authority to engage in the kinds of criminal investigations at issue here — criminal investigations that are at the heart of an agency's general compliance enforcement responsibilities. We therefore hold that appellants are entitled to the return of records and other property seized from them during the IG's *ultra vires* investigations and seizures.

251 F.3d at 185 (internal citation omitted). Subsequently, on consideration of a request for attorneys' fees under the Equal Access to Justice Act, the *Mead* district court concluded that the DOT-IG's legal position was not "substantially justified" and, therefore, awarded fees. *See*

*Truckers United for Safety v. Mead*, 201 F. Supp. 2d 52 (D.D.C. 2002) ("*Mead II*").[2]

In May 2002, the DOT-IG returned the documents to K&C. Sometime thereafter, counsel for the United States informed K&C's counsel that the investigation into K&C was ongoing and that the documents should be preserved.

On September 4, 2002, a federal grand jury in the Western District of Virginia issued subpoenas to K&C for the production of all records that were seized during the 1998 search. These subpoenas also commanded production of similar documents dating from September 2001 forward. K&C moved to quash the subpoenas, but the district court denied the motion. K&C then produced the documents, and the grand jury thereafter issued the indictment.

## II

Before trial, K&C moved to exclude all of the evidence seized during the 1998 search. K&C argued that in light of *Mead I*, the evidence was "improperly seized in violation of the defendants' fourth amendment rights to be free of unreasonable searches and seizures." The district court resolved this motion in two memorandum opinions.

In the first memorandum opinion, the district court — relying on *Mead I* — concluded that the 1998 search warrant was invalid because the DOT-IG's actions were *ultra vires*. The district court also concluded that the 1998 grand jury subpoenas were invalid because they were part of the invalid 1998 DOT-IG investigation, and the 2002 grand jury subpoenas were invalid under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), because they sought the documents that were previously seized pursuant to the 1998 search warrant.[3] Finally, the district court concluded that no constitutional viola-

---

[2]The DOT-IG successfully challenged other aspects of the fee award, but it did not challenge this conclusion. *See Truckers United for Safety v. Mead*, 329 F.3d 891, 894 n.5 (D.C. Cir. 2003).

[3]In *Silverthorne*, the Supreme Court reversed a contempt citation against a company for refusing to comply with an order enforcing grand jury subpoenas. The Court found that the government had illegally seized records from the company and then used the knowledge it had gained from the seizure to have the grand jury call for production of the documents. 251 U.S. at 390-92.

tion had occurred because Agent Johnson's affidavit in support of the 1998 search warrant "fully establishes probable cause" and the 1998 search "would have been valid except for the agent's lack of authority to conduct the investigation."

Following supplemental briefing by the parties, the district court filed the second memorandum opinion to address "the remaining question [of] Defendants' remedy for a statutory violation that does not rise to constitutional proportions." The district court noted that K&C urged it "to invoke its supervisory powers and suppress the evidence" in order to "promote judicial integrity, as well as deter future illegal conduct where law enforcement officials willfully engage in lawless conduct." After analyzing caselaw concerning the supervisory power of federal courts to implement a remedy for a non-constitutional violation, the district court stated that the case involves "neither a mere technical violation of the Inspector General Act of 1978 nor a violation of the statute that rises to constitutional proportions." The district court then concluded:

> [I]t appears that a violation of a statute or regulation — without more — is insufficient grounds to apply the exclusionary rule. But, if additional elements of bad faith, or unreasonable or outrageous conduct exist, then a federal court may use its supervisory powers to exclude the evidence obtained in violation of a statute.

Although the district court observed that it was "unable to point to one egregious or reckless act that taints the conduct in this case," it held that based on "the totality of the circumstances — such as the IG's plain disregard of the congressional limitations on its authority and the manner in which the IG executed the 1998 warrant," the DOT-IG's conduct amounted to "bad faith" and "warrants the suppression of the evidence seized pursuant to the 1998 search warrant and the 1998 and 2002 grand jury subpoenas."

In support of this ruling, the district court found that the plain language of the Inspector General Act and a 1989 Department of Justice Office of Legal Counsel opinion[4] put the DOT-IG on notice that it

---

[4]*See Inspector General Authority to Conduct Regulatory Investigations*, 13 Op. Off. Legal Counsel 54 (1989) ("1989 OLC Opinion").

had no authority to participate in the 1998 investigation. The district court also considered it significant that the DOT-IG and OMC were, in the course of the K&C investigation, engaged in a "coordinated effort" that "required the approval of senior DOT officials." Further, the district court pointed to the conclusion in *Mead II* that the DOT-IG's legal position was not "substantially justified" as evidence that the DOT-IG should have known it could not participate in the 1998 K&C investigation. The district court also found "that the circumstances surrounding the [K&C] investigation and the manner in which the IG conducted the investigation support Defendants' contention that the IG abused its authority." The district court pointed primarily to the facts surrounding the execution of the 1998 search warrant, noting that "the manner in which the IG executed the . . . warrant appears grossly disproportionate to the nature of the alleged violations."

On appeal, the United States primarily argues that the district court erred by invoking its supervisory power to exclude the evidence from trial.[5]

---

[5]We note that although the United States argued below that it lawfully obtained the evidence pursuant to the 1998 grand jury subpoenas, it does not make that argument on appeal. *See generally United States v. Brainard*, 690 F.2d 1117, 1126 (4th Cir. 1982) (holding that grand jury subpoenas constituted an independent source for evidence); *United States v. Eng*, 971 F.2d 854, 859-61 (2d Cir. 1992) (discussing inevitable discovery rule in context of grand jury subpoenas). Instead, in addressing the subpoena issue, the United States argues that the district court improperly quashed the subpoenas issued by the 2002 grand jury. However, while the district court found that the 2002 grand jury subpoenas were "invalid," it did not quash them. Indeed, the district court denied K&C's motion to quash those subpoenas, and the grand jury had access to the K&C documents before it issued the indictment. Therefore, we find no merit to this contention. The United States also asserts in a brief footnote that the district court erred by not considering whether the 2002 grand jury could have obtained the evidence from an independent source or whether the evidence would have been inevitably discovered. We find this cursory assertion insufficient to warrant a ruling on this basis.

III

"The function of a criminal trial is to seek out and determine the truth or falsity of the charges brought against the defendant. Proper fulfillment of this function requires that, constitutional limitations aside, all relevant, competent evidence be admissible, unless the manner in which it has been obtained — for example, by violating some statute or rule of procedure — compels the formulation of a rule excluding its introduction in a federal court." *Lopez v. United States*, 373 U.S. 427, 440 (1963). When, as here, a federal court attempts to formulate such a rule of exclusion, it does so under its inherent or supervisory power, which "permits federal courts to supervise 'the administration of criminal justice' among the parties before the bar," *United States v. Payner*, 447 U.S. 727, 735 n.7 (1980) (citation omitted), and "extends to policing [search and seizure] requirements and making certain that they are observed," *Rea v. United States*, 350 U.S. 214, 217 (1956). This "inherent power to refuse to receive material evidence is a power that must be sparingly exercised," *Lopez*, 373 U.S. at 440, and is not to be invoked in every case of illegality, *Payner*, 447 U.S. at 734.

"The use of the exclusionary rule to remedy statutory violations, as an exercise of the supervisory power, requires an exercise of discretion on the part of the court." *United States v. Searp*, 586 F.2d 1117, 1123 (6th Cir. 1978). We therefore employ the abuse of discretion standard to review the district court's ruling. Generally, we will find that a district court has abused its discretion if its conclusion "is guided by erroneous legal principles" or "rests upon a clearly erroneous factual finding." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Further, even if a district court applied the correct legal principles to adequately supported facts, its exercise of discretion "is not boundless and subject to automatic affirmance." *Id.* Instead, we are "obligated" to review the record and the reasons underlying a district court's ruling, and we must reverse if we have a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (citation and internal quotation marks omitted).

Neither the district court nor the parties have cited to us any cases in which we have considered whether a criminal defendant is entitled

to the exclusion of evidence because a government agent involved in the criminal investigation exceeded his authority. However, we have considered this issue on several occasions and appear to have been consistent in rejecting exclusion as a remedy. *See United States v. Mason*, 52 F.3d 1286, 1289 n.5 (4th Cir. 1995) ("The fact that a Customs Agent who was not technically authorized to conduct the search did so does not rise to the level of a constitutional violation warranting suppression of the evidence seized . . . under these circumstances"); *United States v. Jones*, 13 F.3d 100, 103 (4th Cir. 1993) ("we do not think in any event that the appropriate remedy for an unauthorized [postal inspector] investigation in this case would be suppression of the evidence obtained or reversal of the conviction"); *United States v. Walden*, 490 F.2d 372, 376-77 (4th Cir. 1974) (military investigation of civilian crimes in violation of regulations pursuant to the Posse Comitatus Act did not warrant "extraordinary remedy of an exclusionary rule"). Even so, we have indicated that exclusion *may* be an appropriate remedy in cases involving "severe official misconduct born of malice, caprice or brazen lawlessness." *United States v. Neiswender*, 590 F.2d 1269, 1271-72 (4th Cir. 1979) (declining to reverse conviction based on postal authorities' alleged excess of authority in obtaining warrant for non-postal offense but noting that exclusion may be appropriate); *see also Walden*, 490 F.2d at 377 ("Should there be evidence of widespread or repeated violations in any future case, or ineffectiveness of enforcement by the military, we will consider ourselves free to consider whether adoption of an exclusionary rule is required as a future deterrent").[6]

The district court did not analyze the facts of this case under this standard, but it did conclude that the DOT-IG's violation of the Inspector General Act was sufficient to warrant exclusion of the evidence because the DOT-IG acted in "bad faith."[7] In this regard, the

---

[6]In *Payner*, the Supreme Court noted that "Federal courts may use their supervisory power in some circumstances to exclude evidence taken from the defendant by willful disobedience of law." 447 U.S. at 735 n.7 (citation and internal quotation marks omitted).

[7]We note that the district court's order is premised on the DOT-IG's violation of the Inspector General Act rather than Federal Rule of Criminal Procedure 41, which governs the issuance of search warrants. *See*

district court properly recognized that exclusion of trial evidence is not available to remedy all violations of this sort and that some type of extreme government misconduct must be present. The question we must now answer is whether the facts underlying the district court's "bad faith" conclusion constitute the type of "severe official misconduct" that justifies the exercise of supervisory powers. We believe that they do not.

The district court found the DOT-IG's conduct to constitute "bad faith" in part because of "the manner in which the [DOT-IG] executed the 1998 warrant." As to this finding, the district court pointed to: (1) the number of law enforcement officers who executed the search and the manner in which many of them were outfitted (*i.e.*, "full combat gear"); (2) the sequestration of K&C employees in the employee kitchen while the search was conducted; (3) the presence of local media while the search was conducted; and (4) statements by an OMC official that the search would not have occurred if K&C had complied with the administrative subpoenas. We are not persuaded that these circumstances reasonably support a finding of "bad faith," much less "severe official misconduct."

The search warrant authorized the law enforcement officers to search K&C's business office and all trucks on the premises (including those that came onto the premises while the search was ongoing) for a significant number of documents. The search lasted for at least four hours and yielded 103 boxes of documents and some computer files. While we are not convinced that the number of officers participating in a search would, under any circumstances, be relevant to this type of inquiry, we believe in any event that the scope of this particular search reasonably justified a large number of officers. Moreover, in light of the inherent dangers law enforcement officers face even in their regular duties, we find nothing improper about the officers'

_____

*generally United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000) ("Non-constitutional violations of Rule 41 warrant suppression only when the defendant is prejudiced by the violation or when 'there is evidence of intentional and deliberate disregard of a provision in the Rule'" (citations omitted)).

choice to carry sidearms (or other weapons) and wear protective gear while they performed their search.

Additionally, the sequestration of K&C employees during the search was consistent with caselaw in this circuit. Our holding in *United States v. Photogrammetric Data Services, Inc.* is apt here:

> Because they were in possession of a valid warrant to search the premises . . . for evidence of the fraudulent billing scheme, the agents . . . necessarily had authority to secure the premises and detain the employees temporarily in order to conduct the search with minimal interference. In particular, the agents, . . . suspecting a widespread fraudulent billing practice within the company, had a valid interest in assuring that the altered timesheets they expected to find could be seized before any employee or manager had the opportunity to destroy them.

259 F.3d 229, 239 (4th Cir. 2001) (internal citations omitted).

Further, although the district court found that the search "attracted the attention of the local media," it did not find that the media was present at the request of law enforcement or that law enforcement allowed the media onto K&C property. We are therefore hard-pressed to understand why the media's interest in this case demonstrates "bad faith" on the part of the DOT-IG. We likewise do not believe that the statements by the OMC official necessarily indicate any nefarious motive for the search. Instead, those comments reflect the reality of the situation: once K&C refused to respond to the administrative subpoenas, the search became a logical step in the investigation.

In addition to its criticism of the manner in which the search was conducted, the district court also found that the DOT-IG acted in bad faith because of its "plain disregard of the congressional limitations on its authority." As to this finding, the district court pointed primarily to the plain language of the Inspector General Act and the 1989 OLC opinion, both of which support the conclusion that the DOT-IG was not authorized to conduct the K&C investigation. While we agree that the DOT-IG likely acted in excess of its authority (a fact which the United States now appears to concede) and that it may have been

negligent in doing so, we do not believe that the circumstances of this violation demonstrate "brazen lawlessness." *See, e.g.*, *Walden*, 490 F.2d at 376 ("While the bulk of the evidence was obtained by violating the Instruction, there is totally lacking any evidence that there was a conscious, deliberate or willful intent on the part of the Marines or the Treasury Department's Special Investigator to violate the Instruction or the spirit of the Posse Comitatus Act. From all that appears, the Special Investigator acted innocently albeit ill-advisedly").

IV

In short, we are left with the "definite and firm conviction" that the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Westberry*, 178 F.3d at 261. The invocation of supervisory power to exclude evidence from a criminal trial in order to remedy a government agent's violation of statutory authority in a criminal investigation is an extreme measure that must be reserved for cases involving "severe official misconduct." This is not such a case. We therefore reverse the suppression order and remand for further proceedings consistent with this opinion.[8]

*REVERSED AND REMANDED*

---

[8]K&C argues as an alternative that the evidence should be excluded under the Fourth Amendment because of Agent Johnson's "intentional or reckless misstatement of authority" in the 1998 search warrant affidavit. However, there have been no factual findings in this case to support such a ruling. *See generally Photogrammetric Data Servs.*, 259 F.3d at 237-38 (detailing the strong showing that is necessary to obtain a hearing for a false warrant affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978)).