*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0400p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

AIRTRANS, INC.,

*Plaintiff-Appellant,*

*v.*

No. 02-6411

KENNETH MEAD, individually and in his capacity as
Inspector General, U.S. Department of Transportation;
JOSEPH ZSCHIESCHE, Special Agent, Office of Inspector
General; JEFF HOLT, Dyer County Sheriff; LARRY BELL,
Captain, Dyer County Sheriff's Department; DYER
COUNTY, TENNESSEE; SAMSUNG INTERNATIONAL, INC.;
U.S. LOGISTICS INC.; and CHRISTOPHER ASWORTH, ESQ.,

*Defendants-Appellees,*

UNITED STATES OF AMERICA,

*Intervenor,*

FOUR UNNAMED AGENTS OF THE TENNESSEE
DEPARTMENT OF TRANSPORTATION; JIMMY PORTER,
Dyer County Investigator Sheriff's Department,

*Defendants.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 01-02951—Samuel H. Mays, Jr., District Judge.

Argued: June 15, 2004

Decided and Filed: November 18, 2004

Before: DAUGHTREY and SUTTON, Circuit Judges; COOK, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Anthony J. McMahon, Bethesda, Maryland, for Appellant. Steve Frank, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., James B. Summers, NEELY, GREEN, FARAGARSON,
BROOKE & SUMMERS, Memphis, Tennessee, Edward Medina, KIRBY & McGUINN, San Diego,

_____

[*]The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

California, for Appellees. **ON BRIEF:** Anthony J. McMahon, Bethesda, Maryland, for Appellant. Steve Frank, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., James B. Summers, NEELY, GREEN, FARAGARSON, BROOKE & SUMMERS, Memphis, Tennessee, Edward Medina, Dean T. Kirby, Jr., KIRBY & McGUINN, San Diego, California, for Appellees.

————————————

## OPINION
————————————

PER CURIAM.  This civil rights action, filed pursuant to 42 U.S.C. § 1983, was initiated by the plaintiff, AirTrans, Inc., a Dyer County (Tennessee) long-distance trucking company, while the company was under investigation by the Office of Inspector General (OIG) of the United States Department of Transportation (DOT) for alleged violations of federal criminal statutes.  AirTrans sought damages from and injunctive relief against various state and federal government officials and others, after its offices were subjected to a search and the seizure of company records.  The complaint was based on the contention that the agents' action in executing the search warrant at the AirTrans offices was in violation of the Fourth Amendment because the DOT's Inspector General lacked authority to obtain and execute a search warrant. The district court dismissed the action against all defendants after finding that the complaint failed to state a claim upon which relief could be granted, principally because the court concluded that the search warrant was authorized under § 228 of the Motor Carrier Safety Improvement Act of 1999, Pub. L. No. 106-159, 113 Stat. 1748 (codified at 49 U.S.C. § 101 note and 5 U.S.C. App. § 4 note (2004)).  We find no error and affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

On August 17, 2001, Special Agent Joseph Zschiesche of the DOT's OIG, assisted by FBI agents and deputies from the Dyer County Sheriff's Department, executed a federal search warrant on the premises of plaintiff AirTrans's business offices in Dyersburg, Tennessee.  During execution of the warrant, the agents seized records and disabled company computers, leaving AirTrans effectively unable to operate.  As a result of the search and the continuing federal investigation, AirTrans allegedly suffered injury to its sales, credit, goodwill, and reputation.

The source of the plaintiff's difficulties with the government was an agreement  that AirTrans had reached with defendants Samsung and U.S. Logistics, Inc., under which AirTrans would provide transportation of Samsung's manufactured goods from its factory in Tijuana, Mexico.  Ultimately, a dispute broke out among the parties in December 1999, with AirTrans alleging that Samsung and U.S. Logistics had proposed a fraudulent billing scheme that AirTrans refused to adopt.  Samsung and U.S. Logistics, on the other hand, contended that AirTrans had charged them for some six or seven times the amount of traffic that AirTrans had actually provided, and they refused to pay the full amount of the invoices that AirTrans had sold to a factoring agent named Allied.  As a result, Christopher Ashworth, an attorney representing Samsung and U.S. Logistics, sent Allied a letter dated May 16, 2000, accusing Allied and AirTrans of criminal conduct and indicating that at the request of his clients, he had sent certain business records to the FBI and requested an investigation.

It is not clear from the record in this case whether or not the DOT's ensuing investigation of AirTrans was precipitated by information sent by Ashworth.  What is clear is that the investigation led to criminal litigation involving AirTrans in California and, as part of that investigation, the search of the AirTrans offices in Tennessee.  After the search, AirTrans filed a § 1983 action against the defendants seeking compensation for its business losses, an order declaring the search illegal, and an injunction against the government's continuing investigation of AirTrans.  Motions to dismiss were filed by Inspector General Kenneth Mead and Special Agent Zschiesche, the federal defendants who authorized and secured the search warrant; by the United States as intervenor; and by Samsung, U.S. Logistics, and Christopher Ashworth, the private defendants who allegedly initiated the investigation of AirTrans.  Dyer Sheriff Jeff Holt, Captain

Larry Bell, and Dyer County, the state defendants who assisted in executing the warrant, filed a motion for summary judgment. All of the motions were granted and the complaint was dismissed by the district court. AirTrans now appeals the order of dismissal.

## *DISCUSSION*

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "Whether the district court properly dismissed the complaint pursuant to [Rule] 12(b)(6) is a question of law . . . . All factual allegations are deemed admitted, and when an allegation is capable of more than one inference, it must be construed in the plaintiffs' favor." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039-40 (6th Cir. 1991). "A Rule 12(b)(6) motion should only be granted if 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claim which would entitle [them] to relief.'" *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296 (6th Cir. 1993) (quoting *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 746 (1976)).

We additionally review *de novo* the grant of summary judgment by a district court. See *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Although there are peripheral issues raised on appeal,[1] the dispositive issue on appeal concerns the district court's decision to dismiss the action against the federal defendants on the basis of qualified immunity. AirTrans argues that Agent Zschiesche lacked authority to obtain and execute the search warrant and thereby violated the company's constitutional rights.[2] In support of this contention, the company argues that the district court misinterpreted the Motor Carrier Safety Improvement Act of 1999 (the 1999 Act) in ruling that the federal defendants were entitled to qualified immunity.

---

[1] For example, AirTrans contended that false statements by attorney Ashworth led to the issuance of the search warrant and invoked 18 U.S.C. § 1001 as a basis for seeking damages against both Ashworth and, on a theory of respondeat superior, his clients, Samsung and U.S. Logistics. But there is no right to bring a private action under that federal criminal statute and, as the district court held in dismissing this claim under applicable California law, the statements were privileged because made in the course of official proceedings, citing California Civil Code § 47(b)(3). On appeal, AirTrans seeks to shift the focus away from Ashworth's statements to law enforcement and onto statements made in letters to Allied, conceding that it "does not believe that any report that Ashworth made to the FBI in San Diego resulted in the investigation in Tennessee," but instead positing that a member of Allied contacted the FBI in Tennessee as a result of Ashworth's letter to Allied, creating a chain of events for which Samsung should be held liable. AirTrans does not make clear under what theory or upon what statutory basis this liability should be imposed.

AirTrans also contends that the Dyer County officials who assisted in the search knew that it was illegally obtained and so violated 42 U.S.C. § 1983 by violating AirTrans' constitutional rights under color of state law. The Dyer county defendants maintain that when assisting with the search warrant they were actually "on loan" to the federal government and so were not acting under color of state, but rather federal law. However, the district court did not reach this issue as it was satisfied that the warrant had been obtained legally and so found that AirTrans failed to provide evidence sufficient to raise a genuine issue of material fact showing that its constitutional rights were violated.

[2] AirTrans also attacks the government's motive in pursuing the investigation in the first place, as well as Agent Zschiesche's reason for conducting the search of the AirTrans premises, insisting that the sole purpose of the investigation was to "bring down Freddie Ford," the CEO of the company, in retaliation for his succeeding in having prior federal charges against him dismissed. The most that can be said about this contention is that it was unsubstantiated on the record in this appeal.

As the district court noted,[3] in order to state a claim for violation of its constitutional rights, whether under *Bivens* or 42 U.S.C. § 1983, AirTrans "must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of . . . law." *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).  In determining whether government officials are immune from suit, courts utilize a two-part test.  *See Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996). First, the plaintiff must allege and demonstrate the deprivation of a constitutionally protected right.  *Id.*  If successful in meeting that part of the test, the plaintiff must further show that "the right is so 'clearly established' that a 'reasonable official' would understand that what he is doing violates that right."  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000).

Here, AirTrans alleges that its Fourth Amendment rights were violated by an illegal search and seizure of its property, citing *Truckers United for Safety v. Mead*, 86 F.Supp. 2d 1 (D.D.C. 2000) (*Truckers United I*), and *Truckers United for Safety v. Mead*, 251 F.3d 183 (D.C. Cir. 2001) (*Truckers United II*), to support its contention that the DOT Inspector General was not authorized under §228 of the 1999 Act to obtain and execute a search warrant of the AirTrans offices.   In *Truckers United I*, the district court held that the 1999 Act "granted the IG new authority to conduct investigations of motor carriers' fraudulent and criminal activities related to DOT's operations and programs." *Truckers United II*, 251  F.3d at 185.  On appeal, however, the D.C. Circuit Court reversed the district court's judgment, noting that the investigation in question occurred before the effective date of the amendment, holding that the Act should not be applied retroactively to that investigation, and declining to deliver an "advisory opinion" on the question of the amendment's effect until timely presented.   Given the dates on which the activity in this case was conducted, the question is now ripe for resolution.

The controversy finds its genesis in the original design of the Office of Inspector General, created by Congress in 1978 to provide the various government agencies with "leadership and coordination" by allowing the Inspectors General to "recommend policies for activities designed . . . to promote economy, efficiency, and effectiveness in the administration of, and . . . to prevent and detect fraud and abuse in, such programs and operations."   5 U.S.C. App. § 2(2).  Because they are appointed by the President and confirmed by the Senate, 5 U.S.C. App. § 3(a), the Inspectors General are clothed with a degree of objectivity and independence meant to enhance their principal roles of curtailing bureaucratic waste and mismanagement and of preventing fraud and abuse within each agency by conducting audits and investigations its programs and operations. *See generally Truckers United II*, 251 F.3d at 185-86.  Although supervised by the heads of the various agencies in which they serve, the Inspectors General report directly to Congress and may not be impeded in their work by the heads of their agencies.  5 U.S.C. App. §§ 3(a), 6(a).

Under the Motor Carrier Safety Act of 1984, the Secretary of the DOT has the authority to ensure vehicle safety that includes the power to investigate, to subpoena records and witnesses, and to inspect motor carriers and their documentation.  *See* 49 U.S.C. §§ 502(a), 504(c), 506(a).  These activities were delegated to and carried out by the Federal Highway Administration (FHA) until January 1, 2000, when regulation of interstate motor carriers was transferred to the newly created Federal Motor Carrier Safety Administration as part of the 1999 Act.  In the same legislation, Congress substantially described the scope of authority of the DOT's Inspector General, as follows:

---

[3]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) created a federal right of action for money damages for the violation of constitutional rights.  The Supreme Court writing through Justice Brennan for the majority, acknowledged that although the Fourth Amendment does not allow an award of money damages, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bivens*, 403 U.S. at 396, quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946).  Thus, the Court, "[h]aving concluded that petitioner's complaint states a cause of action under the Fourth Amendment," held that petitioner was "entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment." *Bivens*, 403 U.S. at 397.

(a)  In General.--The statutory authority of the Inspector General of the Department of Transportation includes authority to conduct, pursuant to Federal criminal statutes, investigations of allegations that a person or entity has engaged in fraudulent or other criminal activity relating to the programs and operations of the Department or its operating administrations.

(b) Regulated Entities. – The authority to conduct investigations referred to in subsection (a) extends to any person or entity subject to the laws and regulations of the Department or its operating administrations, whether or not they are recipients of funds from the Department or its operating administrations.

106 P.L. 159, 228; 113 Stat. 1748, 1773 (codified at 49 U.S.C. § 354 (2004)).

Although there may have been some dispute between the DOT's OIG and various trucking companies concerning the scope of the Inspector General's investigative authority prior to the 1999 Act,[4] there can no longer be any question, given the plain language of § 228.  The parties agree that Special Agent Zschiesche obtained a warrant by telling a magistrate judge that he was investigating "criminal activity relating to the programs and operations of the Department [of Transportation]."  49 U.S.C. § 354(a).  More specifically,  Zschiesche claimed that drivers at AirTrans made false statements in an attempt to cover-up violations of federal safety regulations.  Coinciding with Zschiesche's claims, the magistrate judge issued a warrant for the seizure of relevant documents, including  "[d]river qualification files and [] personnel files," "driver logs" and "[a]ny and all records relating to ICC or DOT numbers and of applications for such numbers."  And, according to the Government, one individual has pleaded guilty to making false statements to the Government on a driver employment application as a result of Zschiesche's investigation.  In this way, Zschiesche confined his investigation and search to "criminal activity relating to the programs and operations of the Department [of Transportation]" and complied with § 228 of the 1999 Act.

We hold that the district court was correct in determining that the search warrant secured and executed by Special Agent Zschiesche was validly obtained and that ensuing search did not violate the plaintiff's Fourth Amendment rights in any respect. Having found that there was no constitutional violation, the district court was also correct in granting qualified immunity to the federal defendants and dismissing the complaint as to them, pursuant to Rule 12(b)(6).

## *CONCLUSION*

Because the district court properly dismissed the complaint in this case as to the federal defendants, and because the remaining issues raised on appeal are derivative and therefore rendered moot, we AFFIRM the judgment of the district court as to all defendants.

---

[4] The joint explanatory statement of H.R. 3419: Motor Carrier Safety Improvement Act of 1999 by Rep. Bud Shuster, Rep. James Oberstar, Rep. Thomas Petri, Rep. Nick Rahall, Sen. John McCain and Sen. Ernest Hollings stated:

This section clarifies Congressional intent with respect to the criminal investigative authority of the Department of Transportation Inspector General (IG). When the Office of Motor Carrier Safety finds evidence of egregious criminal violations of motor carrier safety regulations through their regulatory compliance efforts, it refers these cases to the IG's Office of Investigations. Recently, a U.S. District Court concluded that an investigation undertaken by the IG exceeded its jurisdiction,see In the Matter of the Search of Northland Trucking Inc. (D.C. Arizona) [sic], finding that the motor carrier involved was  not a grantee or contractor of the Department, nor was there evidence of collusion with DOT employees. This *narrow construction of the IG's authority is not well grounded in law*, and the managers are concerned about the adverse impacts the Order could have on IG operations. *This provision, therefore, clarifies Congressional intent with respect to the authority of the IG, reaffirming the IG's ability and authority to continue to conduct criminal investigations of parties subject to DOT laws or regulations*, whether or not such parties receive Federal funds from the Department. 145 Cong Rec H 12874 (Nov. 18, 1999) (emphasis added).