*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JACKSON, TENNESSEE HOSPITAL COMPANY, LLC,
  *Plaintiff-Appellant,*

  *v.*

WEST TENNESSEE HEALTHCARE, INC., JACKSON-
MADISON COUNTY GENERAL HOSPITAL DISTRICT,
and BLUECROSS BLUESHIELD OF TENNESSEE, INC.,
  *Defendants-Appellees.*

No. 04-5387

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 03-01166—James D. Todd, Chief District Judge.

Argued: March 10, 2005

Decided and Filed: July 11, 2005

Before: BOGGS, Chief Judge; and COOK and BRIGHT, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Harry M. Reasoner, VINSON & ELKINS, Houston, Texas, for Appellant. David Marx, Jr., McDERMOTT, WILL & EMERY, Chicago, Illinois, Kevin D. McDonald, JONES DAY, Washington, D.C., for Appellees. **ON BRIEF:** Harry M. Reasoner, Bruce A. Blefeld, VINSON & ELKINS, Houston, Texas, Cannon F. Allen, ARMSTRONG ALLEN, Memphis, Tennessee, Robert V. Redding, ARMSTRONG ALLEN, Jackson, Tennessee, for Appellant. David Marx, Jr., Joseph Fisher, Kevin M. Jones, McDERMOTT, WILL & EMERY, Chicago, Illinois, Kevin D. McDonald, Julia C. Ambrose, JONES DAY, Washington, D.C., Jerry D. Kizer, Jr., RAINEY, KIZER, REVIERE & BELL, Jackson, Tennessee, Max Shelton, HARRIS, SHELTON, DUNLAP, COBB & RYDER, Memphis, Tennessee, for Appellees. Cathrine G. O'Sullivan, David Seidman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Victor J. Domen, Jr., OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Carlos C. Smith, MILLER & MARTIN, Chattanooga, Tennessee, J. Robin Rogers, STRANG, FLETCHER, CARRIGER, WALKER, HODGE & SMITH, Chattanooga, Tennessee, for Amici Curiae.

---

[*]The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

---

## OPINION

---

BOGGS, Chief Judge.  Although this is an antitrust case, it turns on the proper interpretation of a Tennessee statute.  The plaintiff alleges that the Jackson-Madison County General Hospital District (the "Hospital District"), which is a political subdivision of the state of Tennessee, and the other defendants have committed antitrust violations.  The district court dismissed the suit, finding that the state action doctrine protects the defendants from antitrust liability.  The state action doctrine protects subdivisions of a state government from antitrust liability when there is a clearly expressed state policy authorizing anticompetitive acts. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985).  The issue, then, is whether Tennessee law authorizes the Hospital District to engage in anticompetitive actions.  We conclude that it does, and therefore affirm.

## I

The Hospital District is a "private act hospital authority"[1] ("hospital authority) created by the Tennessee Legislature.[2]  The Hospital District was created in 1949 to own, manage, and operate hospital facilities.  The original rationale for the Hospital District was to serve indigent and low-income patients, although it has since expanded into a full-service healthcare operation.  The Hospital District is a political subdivisions of the state of Tennessee.

The Tennessee Legislature recently reformed the statutory framework governing hospital authorities.  In Acts passed in 1995 and 1996 ("the Acts"), the legislature gave hospital authorities far greater freedom of operation.[3]  The Acts granted hospital authorities broad powers, including the ability to:

---

[1]Tenn. Code Ann. § 7-57-602:

For the purpose of this part, "private act hospital authority" is any hospital owned or operated by one (1) or more local governments or any hospital, hospital authority or hospital district created or authorized by a private act of the general assembly.

[2]Another named defendant, West Tennessee Healthcare, is a wholly-owned subsidiary of the Hospital District.

[3]The stated purpose of the Acts was:

The general assembly hereby finds that the demand for hospital, medical and health care services is rapidly changing as is the way and manner in which such services are purchased and delivered; that the market for hospital and health care services is becoming increasingly competitive; and that the hospital and other health care providers need flexibility to be able to respond to changing conditions by having the power to develop efficient and cost-effective methods to provide for hospital, medical and health care needs. The general assembly also finds that the increasing competition and changing conditions force hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The general assembly further finds that public hospitals in metropolitan areas are presently at a competitive disadvantage, and that significant investments in the public assets of private act metropolitan hospital authorities could be jeopardized by inability to compete with private hospitals because of legal constraints upon the scope of their operations and limitations upon the power granted to public hospitals under existing law.

Tenn. Code Ann. § 7-57-501(b).

- Borrow, issue bonds, or take on other forms of debt

- Own and operate subsidiaries such as outpatient departments, clinics, etc.

- Participate as a shareholder or partner in any lawful form of business

- Set fees to be charged to patients

- Hire and fire all employees, as well as set the terms of compensation

- Set rules governing physicians and other providers operating within the authority

- Set criteria for admission of patients

- Sue and be sued

- Invest any excess funds

- Acquire or improve any real property

Tenn. Code Ann. § 7-57-502(a)-(b). And, just in case anything was missed, the list ends with a catch-all provision: the hospital authority shall "[h]ave and exercise *all powers necessary or convenient to effect any or all the purposes* for which a private act metropolitan hospital authority is organized." Tenn. Code Ann. § 7-57-502(b)(10) (emphasis added). In short, after the Acts, a hospital authority has broad powers to do almost anything plausibly related to its mission of providing healthcare services.

At the heart of this dispute is the final provision in the "Powers Granted" section:

> In the exercise of its powers, including, without limitation, the powers in this section, any other provision of this part and of any other law a private act metropolitan hospital authority may acquire, manage, lease, purchase, sell, contract for or otherwise participate solely or with others in the ownership or operation of hospital, medical or health program properties and facilities and properties, facilities, and programs supporting or relating thereto of any kind and nature whatsoever and in any form of ownership whenever the board of trustees in its discretion shall determine it is consistent with the purposes and policies of this part or any private act applicable to it, and *may exercise such powers regardless of the competitive consequences thereof*.

Tenn. Code Ann. § 7-57-502(c) (emphasis added). The meaning of the last two lines is in dispute.

On July 6, 2003, Jackson, Tennessee Hospital Company ("THC"), which operates a private hospital in Jackson-Madison County, filed suit in federal district court against the Hospital District, West Tennessee Healthcare, and BlueCross BlueShield ("BlueCross") alleging violations of state and federal antitrust laws. THC alleges that the defendants engaged in various anticompetitive acts to monopolize the local healthcare market. Among the acts alleged were exclusive contracting with doctors and insurance companies, acquiring real estate around the private hospital to block expansion, charging prices that were too low or too high, acquiring other healthcare providers, and bundling its services. On February 27, 2004, the district court granted the defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss on the grounds that the state action doctrine barred antitrust liability.

## II

We review the district court's grant of a Fed. R. Civ. P. 12(b)(6) motion to dismiss *de novo*. *AirTrans, Inc. v. Mead*, 389 F.3d 594, 597 (6th Cir. 2004). All factual allegations are taken to be true, and we draw all reasonable inferences in favor of the plaintiff. *Ibid*. "A Rule 12(b)(6) motion should only be granted if it appears beyond doubt that the plaintiffs can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Ibid*. (quotation marks omitted).

The defendants argue that the state action doctrine bars liability on any of the antitrust claims raised by the plaintiff. BlueCross also argues, in the alternative, that it is protected from antitrust liability by the *Noerr-Pennington* doctrine. Because we conclude that the state action doctrine bars antitrust liability for all the defendants, including BlueCross, we do not reach this alternative argument.

### A

Under the so-called "state action doctrine," it is well established that antitrust law does not apply to states acting as sovereigns.[4] *Parker v. Brown*, 317 U.S. 341 (1943). The Supreme Court has determined that principles of federalism and state sovereignty provide blanket protection for states, but political subdivisions of the states are not automatically immune from antitrust liability. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 370 (1991). Political subdivisions of states are beyond the reach of the antitrust laws only when they act pursuant to a "clearly expressed state policy."[5] *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985). The state legislature need not explicitly authorize anticompetitive conduct, as long as anticompetitive effect would logically result from the authority granted by the state. *Columbia*, 499 U.S. at 372-73 ("[i]t is enough, we have held, if suppression of competition is the 'foreseeable result' of what the statute authorizes"); *Hallie*, 471 U.S. at 41-42. Applying these principles, we recently held that Michigan law implicitly authorized anticompetitive conduct when it empowered prisons to grant public contracts for the provision of telephone services. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527 (6th Cir. 2002). The issues of implied authority and "foreseeable" anticompetitive effects are recurring ones in the case law, but, obviously, are relevant only when there is no express authorization for anticompetitive conduct.

### B

Defendants hold the trump in this case: plain statutory language. The crux is the following sentence, which appears after the long list of specific and general powers granted by the Acts: "[hospital authorities] may exercise such powers *regardless of the competitive consequences thereof*." Tenn. Code Ann. § 7-57-502(c) (emphasis added). The phrase "competitive consequences" is commonly used in antitrust and competition law. *See*, *e.g.*, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 251 (1993) ("[an element] of the violation is the competitive consequences of predatory conduct."); *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 557 (1990) ("[the Robinson-Patman Act] plainly reveals a concern with competitive consequences

---

[4] The parties do not contest that the state action doctrine, if applicable, protects both the government entity – the hospital authority – and the private parties with whom it contracts – BlueCross. This is sensible, as the protection would be worthless in many cases if a plaintiff could simply sue private parties that contracted with the government.

[5] After *Hallie*, the only requirement for sovereign immunity for political subdivisions is a clearly articulated state policy. *Id.* at 46. At one time, there was also an "active state supervision requirement," but in *Hallie* the Supreme Court noted that this was primarily evidentiary and discarded this part of the test unless "regulation by a private party" is involved. *Ibid.*

. . . .”).  We are not aware of any other context in which this phrase is commonly used, and the plaintiff has not provided any authority suggesting an alternative meaning.  The antitrust laws protect competition and are concerned with competitive consequences; thus, permission to act “regardless of competitive consequences” is most sensibly read as an authorization to act without regard for the antitrust laws.

Although no Tennessee court has addressed this issue,[6] the Tennessee Attorney General reached the same conclusion in a 1995 Opinion.  Around the time the 1995 Act was passed, the Tennessee Attorney General opined that “[t]he exercise of the increased powers and privileges set forth in the Act qualifies for state action immunity from the federal antitrust law.”[7]  In his analysis, the Attorney General concluded that the Act “contemplates and expresses an intent to displace competition.”  In this litigation, the current Attorney General takes a different view, but we think the original position, issued without the prospect of litigation, expresses the better view of the language.

The primary response of plaintiff and its *amici* is to argue that the Tennessee legislature intended to promote competition in the healthcare market, and favors competition generally.  *See* Tenn. Const. Art. I, § 22 (“That perpetuities and monopolies are contrary to the genius of a free State, and shall not be allowed.”); Tenn. Code Ann. § 68-11-1625(b) (“It is the policy of the state of Tennessee that: . . . The state’s health care resources should be developed to address the needs of Tennesseans while encouraging competitive markets, economic efficiencies and the continued development of the state’s health care industry”).  The plaintiff also notes that the statement of purpose for the 1995 Act expresses a desire to enable public hospitals to compete with private hospitals.  *See supra* n.3.  In the face of a clear public policy favoring competition, plaintiff argues, the “regardless of” phrase cannot be interpreted to grant antitrust immunity.  Defendants and their *amici* dispute whether Tennessee is in fact uniformly hostile to monopoly, and advance the view that, although the legislature was somewhat concerned with competitive effects, it was determined to advance the interests of hospital authorities even at the expense of competition.

More importantly, the plaintiff’s argument is at odds with a basic principle of interpretation: the specific trumps the general.  It is no doubt true that Tennessee prefers competition as a general matter, but this is true of the federal government and probably every other state as well.  Despite this, our various federal and state governments regularly carve out exceptions.  Indeed, the appropriate level of competition in health care is a policy question that is regularly revisited at both

---

[6]Both parties rely upon the opinion of the Tennessee Supreme Court in *City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897 (Tenn. 2004).  The *Cookeville* court faced the issue of whether the statute authorized a hospital authority to close its imaging department and then enter into an exclusive contract with a private provider.  The Tennessee Supreme Court stated:

> [Tennessee statute] provides in pertinent part that a metropolitan hospital authority, in the exercise of its powers, may “contract for or otherwise participate solely or with others” in furtherance of the hospital’s operation. Additionally, the plain language of this statute permits private act metropolitan hospitals to enter into a contract “*regardless of the competitive consequences [of the contract]*.”  Therefore, it is clear that private act metropolitan hospital authorities are statutorily authorized to execute exclusive provider contracts.

*Id.* at 902 (citations omitted)(emphasis in original).  *Cookeville* does confirm that the “regardless of” clause applies to all the powers granted in § 7-57-502(a)-(b) and that those powers are quite broad. However, *Cookeville* did not involve an antitrust claim, and is therefore of limited usefulness in determining whether the “regardless of” phrase was meant to create an exemption from the antitrust laws.

[7]This opinion was actually issued six days before the 1995 Act was passed (the then-draft language was the same as the enacted version).  It therefore serves a dual role as legislative history and as the opinion of the Tennessee Attorney General at the time the bill was passed.

the federal and state levels. Here, the language of the statute clearly indicates the desire to create an exception to the antitrust laws, and the general preference for competition is therefore superseded.

When the plaintiff turns to the "regardless of" language, it is only to dismiss it as a "tag-line phrase." It argues that the language only authorizes hospital authorities to enter into contracts and exercise their powers even if such actions disadvantage competing hospitals and doctors: the "regardless of" phrase "thus recognized that the 'competitive consequences' of making public hospitals more competitive was that individual competitors might be harmed. This type of harm, however is the essence of competition." Pl.'s Br. at 24-25. This reading, however, would render the language hortatory. Obviously, any government entity's actions will have an effect, sometimes negative, on private actors. Moreover, the "regardless of" clause appears in a section of the Act granting powers to hospital authorities, and this would be an odd place for the legislature to add a "tag-line" phrase that simply notes a possible consequence of its enactment. Finally, the plaintiff does not cite any examples or authority for this limited reading of the phrase "competitive consequences," and it is contrary to the common legal usage.

In sum, we read the legislative language and surrounding circumstances as demonstrating that the Tennessee legislature invested public hospital corporations with very broad powers to ensure their continued viability; authorized them to exercise many powers, such as contracting for services and acquiring property, that could easily lead to anti-competitive consequences; and then specifically stated that such activities could be undertaken without regard to the effects of such activity on competition. This constitutes the authorization necessary to invoke the state action doctrine.

## III

For the foregoing reasons, we AFFIRM the judgment of the district court.