(Slip Opinion)

# "Urgent Concern" Determination by the Inspector General of the Intelligence Community

A complaint from an intelligence-community employee about statements made by the President during a telephone call with a foreign leader does not involve an "urgent concern," as defined in 50 U.S.C. § 3033(k)(5)(G), because the alleged conduct does not relate to "the funding, administration, or operation of an intelligence activity" under the authority of the Director of National Intelligence. As a result, the statute does not require the Director to transmit the complaint to the congressional intelligence committees.

September 3, 2019

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE*

On August 26, 2019, the Inspector General of the Intelligence Community ("ICIG") forwarded to the Acting Director of National Intelligence ("DNI") a complaint from an employee within the intelligence community. The complainant alleged that unnamed "White House officials" had expressed concern that during a July 25, 2019 phone call, President Trump had sought to pressure the Ukrainian president to pursue investigations that might have the effect of assisting the President's re-election bid. According to the ICIG, such a request could be viewed as soliciting a foreign campaign contribution in violation of the campaign-finance laws. *See* Letter for Joseph Maguire, Acting Director of National Intelligence, from Michael K. Atkinson, Inspector General of the Intelligence Community, at 3 (Aug. 26, 2019) ("ICIG Letter"). In the ICIG's view, the complaint addresses an "urgent concern" for purposes of triggering statutory procedures that require expedited reporting of agency misconduct to the congressional intelligence committees. Under the applicable statute, if the ICIG transmits such a complaint to the DNI, the DNI has seven days to forward it to the intelligence committees. *See* 50 U.S.C. § 3033(k)(5)(C).

---

* Editor's Note: This memorandum was originally issued in classified form on September 3, 2019. An unclassified version was signed on September 24, 2019, and publicly released in slip-opinion form on September 25, 2019. That unclassified version avoided references to certain details that remained classified at the time it was signed. After the underlying documents were themselves declassified, the September 3 memorandum was declassified in its entirety and publicly released on September 26, 2019.

The complaint does not arise in connection with the operation of any U.S. government intelligence activity, and the alleged misconduct does not involve any member of the intelligence community. Rather, the complaint arises out of a confidential diplomatic communication between the President and a foreign leader that the intelligence-community complainant received secondhand. The question is whether such a complaint falls within the statutory definition of "urgent concern" that the law requires the DNI to forward to the intelligence committees. We conclude that it does not. The alleged misconduct is not an "urgent concern" within the meaning of the statute because it does not concern "the funding, administration, or operation of an intelligence activity" under the authority of the DNI. *Id*. § 3033(k)(5)(G)(i). That phrase includes matters relating to intelligence activities subject to the DNI's supervision, but it does not include allegations of wrongdoing arising outside of any intelligence activity or outside the intelligence community itself.

Our conclusion that the "urgent concern" requirement is inapplicable does not mean that the DNI or the ICIG must leave such allegations unaddressed. To the contrary, the ICIG statute, 50 U.S.C. § 3033(k)(6), makes clear that the ICIG remains subject to 28 U.S.C. § 535, which broadly requires reporting to the Attorney General of "[a]ny information, allegation, matter, or complaint witnessed, discovered, or received in a department or agency . . . relating to violations of Federal criminal law involving Government officers and employees." 28 U.S.C. § 535(b). Accordingly, should the DNI or the ICIG receive a credible complaint of alleged criminal conduct that does not involve an "urgent concern," the appropriate action is to refer the matter to the Department of Justice, rather than to report to the intelligence committees under section 3033(k)(5). Consistent with 28 U.S.C. § 535, the ICIG's letter and the attached complaint have been referred to the Criminal Division of the Department of Justice for appropriate review.

## I.

An "employee of an element of the intelligence community" (or an intelligence-community contractor) "who intends to report to Congress a complaint or information with respect to an urgent concern may report

such complaint or information to the" ICIG. 50 U.S.C. § 3033(k)(5)(A).[1] On August 12, 2019, the Office of the ICIG received a complaint purporting to invoke this provision. The complainant alleged that he or she had heard reports from White House officials that in the course of a routine diplomatic communication between President Trump and Ukrainian President Volodymyr Zelenskyy, President Trump had "sought to pressure the Ukrainian leader to take actions to help the President's 2020 reelection bid." ICIG Letter at 3 (quoting the complainant's letter). Specifically, the complainant allegedly heard that the President had requested that the Ukrainian government investigate the activities of one of the President's potential political rivals, former Vice President Joseph Biden, and his son, Hunter Biden. The complainant also allegedly heard that the President had requested Ukrainian assistance in investigating whether Russian interference in the 2016 U.S. presidential election originated in Ukraine, and that Ukrainian investigators meet with the President's personal lawyer, Rudolph Giuliani, as well as Attorney General William Barr regarding these matters. The complainant described this communication as arising during a scheduled call with the foreign leader that, consistent with usual practice, was monitored by approximately a dozen officials in the White House Situation Room. Having heard about the President's reported statements, the complainant expressed an intent to report this information to the intelligence committees.

When the ICIG receives a complaint about an "urgent concern," the statute provides that the ICIG then has 14 days to "determine whether the complaint or information appears credible." 50 U.S.C. § 3033(k)(5)(B). The ICIG determined that the complaint here involved an "urgent concern" under section 3033(k)(5) and that it appeared credible. *See* ICIG Letter at 5. As relevant here, the statutory definition of an "urgent concern" includes "[a] serious or flagrant problem, abuse, [or] violation of law . . . relating to the funding, administration, or operation of an intelligence activity within the responsibility and authority of the Director

---

[1] Section 8H of the Inspector General Act of 1978 ("IG Act"), 5 U.S.C. app., parallels the urgent-concern provision of the ICIG statute, 50 U.S.C. § 3033(k)(5), and appears to provide another pathway to report an urgent concern to the ICIG or an appropriate inspector general. Because the complainant and the ICIG in this instance invoked only section 3033(k)(5), we address that provision in our opinion, but as discussed below, the DNI's reporting obligation would be the same under either provision. *See infra* Part II.A & n.6.

of National Intelligence involving classified information." 50 U.S.C. § 3033(k)(5)(G)(i). According to the ICIG, the President's actions could involve a "serious or flagrant problem," "abuse," or violation of law, and the ICIG observed that federal law prohibits any person from soliciting or accepting a campaign contribution or donation from a foreign national. ICIG Letter at 3; *see, e.g.*, 52 U.S.C. § 30121(a).[2] The ICIG further noted that "alleged conduct by a senior U.S. public official to seek foreign assistance to interfere in or influence a Federal election" could "potentially expose [the official] to serious national security and counterintelligence risks." ICIG Letter at 3. Although the ICIG's preliminary review found "some indicia of an arguable political bias on the part of the Complainant in favor of a rival political candidate," the ICIG concluded that the complaint's allegations nonetheless appeared credible. *Id.* at 5.

The ICIG concluded that the matter concerns an intelligence activity within the DNI's responsibility and authority. He reasoned that the DNI is "the head of the Intelligence Community," "act[s] as the principal adviser . . . for intelligence matters related to national security," and oversees the National Intelligence Program and its budget. *Id.* at 4 (internal quotation marks omitted). In addition, the intelligence community, under the DNI's direction, "protect[s] against intelligence activities directed against the United States," including foreign efforts to interfere in our elections. *Id.* (internal quotation marks and ellipsis omitted).[3] The ICIG also found it relevant that the President has directed the DNI to issue a report, within

---

[2] The ICIG determined that the allegation "appears credible" without conducting any detailed legal analysis concerning whether the allegation, if true, would amount to an unlawful solicitation of a campaign contribution. *See* ICIG Letter at 5. We likewise do not express a view on the matter in this opinion.

[3] The ICIG also noted that the complainant alleged that "officials from the Office of Management and Budget" had informed the "interagency" that "the President had issued instructions to suspend all security assistance to Ukraine," and that "there might be a connection" between the President's call with the Ukrainian president and this action. ICIG Letter at 4 n.12. The ICIG suggested that if the allegedly improper motives could be substantiated, then this decision "might implicate the Director of National Intelligence's responsibility and authority with regard to implementing the National Intelligence Program and/or executing the National Intelligence Program budget." *Id.* However, the ICIG did not further explain what role the DNI had in connection with Ukraine security assistance, how an alleged direction from the President would implicate the DNI's performance of his responsibilities, or whether an allegation of improper motive appeared credible.

45 days of a federal election, assessing any information indicating that a foreign government interfered in that election. *Id*. at 4 n.14; *see* Exec. Order No. 13848, § 1(a) (Sept. 12, 2018). For these reasons, the ICIG concluded that the complaint involves an intelligence activity within the responsibility and authority of the DNI. ICIG Letter at 5.[4] He thus transmitted the complaint to the DNI on August 26, 2019.

## II.

You have asked whether the DNI has a statutory obligation to forward the complaint to the intelligence committees. We conclude that he does not. To constitute an "urgent concern," the alleged misconduct must involve "the funding, administration, or operation of an intelligence activity within the responsibility and authority" of the DNI. 50 U.S.C. § 3033(k)(5)(G)(i). Similar to other aspects of the ICIG's responsibilities, the urgent-concern provision permits employees to bring to the intelligence committees' attention credible allegations of serious abuses arising from within the U.S. intelligence community.[5] This provision, however, does not cover every alleged violation of federal law or other abuse that comes to the attention of a member of the intelligence community. Where,

---

[4] The complainant also alleged that unnamed officials within the Executive Office of the President had attempted to restrict access to records of the President's call with the Ukrainian president by placing the transcript into a computer system managed by the National Security Council Directorate for Intelligence Programs that was reserved for codeword-level intelligence programs. The complainant stated that some officials at the White House had advised that this action may have been an abuse of the system, but the ICIG did not discuss this allegation in concluding that the complaint stated an urgent concern.

[5] We have recognized constitutional concerns with statutory requirements that subordinate executive branch officials disclose classified information to congressional committees. *See, e.g.*, *Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 100 (1998). In addition, the materials here concern diplomatic communications, and as Attorney General Janet Reno recognized, "[h]istory is replete with examples of the Executive's refusal to produce to Congress diplomatic communications and related documents because of the prejudicial impact such disclosure could have on the President's ability to conduct foreign relations." *Assertion of Executive Privilege for Documents Concerning Conduct of Foreign Affairs with Respect to Haiti*, 20 Op. O.L.C. 5, 6 (1996) (opinion of Attorney General Janet Reno). Addressing the statutory question in this opinion, however, does not require us to consider constitutional limits on congressional reporting requirements.

as here, the report concerns alleged misconduct by someone from outside the intelligence community, separate from any "intelligence activity" within the DNI's purview, the matter is not an "urgent concern" under the statute.

## A.

Congress has specified certain procedures by which an intelligence-community employee may submit a complaint to Congress. Those procedures, which involve the ICIG, require that the subject of the complaint present an "urgent concern." In relevant part, an "urgent concern" is:

> A serious or flagrant problem, abuse, violation of law or Executive order, or deficiency relating to *the funding, administration, or operation of an intelligence activity* within the responsibility and authority of the Director of National Intelligence involving classified information, but does not include differences of opinions concerning public policy matters.

50 U.S.C. § 3033(k)(5)(G)(i) (emphasis added). The Inspector General Act contains a parallel provision that applies to complaints submitted to inspectors general within the intelligence community. *See* IG Act § 8H(i)(1)(A), 5 U.S.C. app. ("A serious or flagrant problem, abuse, violation of law or Executive order, or deficiency relating to *the funding, administration, or operations of an intelligence activity* involving classified information, but does not include differences of opinions concerning public policy matters." (emphasis added)).[6]

That definition undergirds the urgent-concern framework that applies when "[a]n employee of an element of the intelligence community . . . intends to report to Congress a complaint or information with respect to an urgent concern." 50 U.S.C. § 3033(k)(5)(A). The provision contemplates, as relevant here, that the employee first "report[s] such complaint

---

[6] The definition of "urgent concern" in the IG Act is not limited to intelligence activities that are specifically "within the responsibility and authority of the" DNI because the complaint procedures in section 8H are written to apply to multiple inspectors general within the intelligence community. *See* IG Act § 8H(a)(1)(A)–(D), 5 U.S.C. app. (including separate provisions for the Inspectors General for the Department of Defense, for the Intelligence Community, for the Central Intelligence Agency, and for the Department of Justice).

or information to the [ICIG]." *Id*. The ICIG then has 14 days to evaluate the credibility of the complaint "under subparagraph (A)" and determine whether to transmit it to the DNI. *Id*. § 3033(k)(5)(B). If the ICIG transmits the complaint to the DNI "under subparagraph (B)," then the DNI "shall, within 7 calendar days of such receipt, forward such transmittal to the congressional intelligence committees, together with any comments the [DNI] considers appropriate." *Id*. § 3033(k)(5)(C).

Each of those steps builds on the previous one, but they must all rest on a sound jurisdictional foundation. If the complaint does not involve an "urgent concern," as defined in the statute, then the remaining procedures are inapplicable. When the ICIG receives a complaint that is not an "urgent concern," then he has not received a report "under subparagraph (A)" and section 3033(k)(5)(B) does not trigger a reporting obligation. And when the DNI receives a transmittal that does not present an urgent concern, then the DNI is not required to forward it to the congressional committees, because the complaint is not one "under subparagraph (B)." *Id*. § 3033(k)(5)(C).

## B.

The complainant describes a hearsay report that the President, who is not a member of the intelligence community, abused his authority or acted unlawfully in connection with foreign diplomacy. In the ICIG's view, those allegations fall within the urgent-concern provision because the DNI has operational responsibility to prevent election interference.[7] But even

---

[7] The ICIG cites no statute or executive order charging the DNI with operational responsibility for preventing foreign election interference. The DNI serves as the head of the intelligence community, the principal intelligence adviser to the President, and the official responsible for supervising the National Intelligence Program, who sets general objectives, priorities, and policies for the intelligence community. 50 U.S.C. §§ 3023(b), 3024(f)(1)(A), (f)(3)(A). The DNI thus surely has responsibility to coordinate the activities of the intelligence community and the provision of intelligence to the President and other senior policymakers concerning foreign intelligence matters. But the complaint does not suggest misconduct by the DNI or any of his subordinates in connection with their duties. Moreover, even if the DNI had general oversight responsibility for preventing foreign election interference, the DNI's oversight responsibilities do not appear to extend to the President. By statute, the DNI exercises his authority subject to the direction of the President, *see id*. §§ 3023(b), 3024(f)(1)(B)(i), (j), and the statute's definition of "intelligence community" conspicuously omits the Executive Office of the President, *see id.*

if so, it does not follow that the alleged misconduct by the President concerns "the funding, administration, or operation of an intelligence activity within the responsibility and authority" of the DNI because the allegations do not arise in connection with any such intelligence activity at all. 50 U.S.C. § 3033(k)(5)(G)(i). The complaint therefore does not state an "urgent concern."

We begin with the words of the statute. Section 3033(k)(5)(G) does not expressly define "intelligence activity," but the meaning of the phrase seems clear from context. The "intelligence activit[ies]" in question are ones over which the DNI has "responsibility and authority," which points to intelligence-gathering, counterintelligence, and intelligence operations undertaken by the intelligence community under the supervision of the DNI. *Id*. The National Security Act of 1947 commonly refers to "intelligence activities" as authorized activities undertaken by the intelligence community. Section 3024(c)(4), for instance, requires the DNI to "ensure the effective execution of the annual budget for intelligence and intelligence-related activities." *Id*. § 3024(c)(4). Section 3023(b)(3) authorizes the DNI to "oversee and direct the implementation of the National Intelligence Program," *id*. § 3023(b)(3), which itself is defined to include "all programs, projects, and *activities* of the intelligence community," *id*. § 3003(6) (emphasis added). Section 3094 conditions the use of appropriated funds "available to an intelligence agency . . . for an *intelligence or intelligence-related activity*," and defines an "intelligence agency" as "any department, agency, or other entity of the United States involved in intelligence or intelligence-related activities." *Id*. § 3094(a), (e)(1) (emphasis added). Sections 3091 and 3092 similarly contemplate the reporting to Congress of "intelligence activities" carried out by the U.S. government. *See id*. §§ 3091(a), 3092(a). In addition, in establishing the Office of the DNI, Congress was aware of the long-standing definition set forth in Executive Order 12333, which defines "[i]ntelligence activities" to "mean[] all activities that elements of the Intelligence Community are

---

§ 3003(4). The DNI's charge to "ensure compliance with the Constitution and laws of the United States" applies to overseeing the "Central Intelligence Agency" and "other elements of the intelligence community." *Id*. § 3024(f)(4). Nevertheless, we need not reach any definitive conclusion on these matters, because even if foreign election interference would generally fall within the DNI's purview, the complaint does not concern an "intelligence activity within the responsibility and authority" of the DNI under section 3033(k)(5).

authorized to conduct pursuant to this order." Exec. Order No. 12333, § 3.5(g) (Dec. 4, 1981) (as amended). The "urgent concern" statute thus naturally addresses complaints arising out of the "funding, administration, or operation" of activities carried out by the intelligence community.

This meaning of "intelligence activities" is also consistent with the ICIG's authorities under other portions of section 3033. Just as an "urgent concern" must arise in connection with "an intelligence activity within the responsibility and authority" of the DNI, the ICIG's jurisdiction and reporting obligations are keyed to those "programs and activities within the responsibility and authority of" the DNI. 50 U.S.C. § 3033(b)(1), (b)(3)(A), (b)(4)(A), (d)(1), (e)(1), (e)(2), (g)(2)(A), (k)(1)(B)(vii), (k)(2)(A). That language parallels the language that commonly defines the purview of inspectors general. *See* IG Act § 4(a)(1), 5 U.S.C. app. (generally authorizing inspectors general to conduct investigations "relating to the programs and operations" of the agency). Such language has been consistently construed to permit inspectors general to oversee an agency's implementation of its statutory mission, but not to extend to performing the agency's mission itself. *See Inspector General Authority to Conduct Regulatory Investigations*, 13 Op. O.L.C. 54, 58–67 (1989).

Consistent with that view, the D.C. Circuit concluded that the Department of Transportation's inspector general exceeded his authority when he "involved himself in a routine agency investigation" as opposed to "an investigation relating to abuse and mismanagement in the administration of the DOT or an audit of agency enforcement procedures or policies." *Truckers United for Safety v. Mead*, 251 F.3d 183, 189–90 (D.C. Cir. 2001). The Fifth Circuit reached a similar conclusion regarding an inspector general's authority to engage in regulatory compliance investigations, expressly endorsing the approach taken by this Office's 1989 opinion. *See Burlington N. R.R. Co. v. Office of Inspector General*, 983 F.2d 631, 642–43 (5th Cir. 1993). Similarly here, the ICIG has the authority to review the DNI's exercise of his responsibility to coordinate and oversee the activities of the intelligence community—including, for instance, reviewing whether the DNI has appropriately discharged any authorities concerning preventing foreign election interference. But the ICIG does not himself have the authority to investigate election interference by foreign actors, because such an investigation would not involve an activity or program of the intelligence community under the DNI's supervision. We do not believe that the subjects of "urgent concern" reports to the

ICIG are broader than other matters that fall within the investigative and reporting authority of the ICIG.

In establishing the office of the ICIG, Congress created an accountable and independent investigator who, subject to the general supervision of the DNI, would review the activities of members of the intelligence community. The ICIG is charged with "conduct[ing] independent investigations, inspections, audits, and reviews on programs and activities within the responsibility and authority" of the DNI. 50 U.S.C. § 3033(b)(1). The ICIG is also charged with overseeing and uncovering wrongdoing in the operations of programs under the DNI's supervision. But the ICIG's responsibility "to promote economy, efficiency, and effectiveness" in the administration of such programs, and "to prevent and detect fraud and abuse," *id.* § 3033(b)(2), must necessarily concern the programs themselves. Although the DNI and the intelligence community collect intelligence against foreign threats, the ICIG's responsibility is to watch the watchers in the performance of their duties, not to investigate and review matters relating to the foreign intelligence threats themselves.[8]

Throughout section 3033, the assumption, sometimes explicit and sometimes tacit, is that the ICIG's authority extends to the investigation of U.S. government intelligence activities, not to those foreign threats that are themselves the concerns of the intelligence community. Thus, the ICIG has a statutory right of "access to any employee, or any employee of a contractor, of any element of the intelligence community." *Id.* § 3033(g)(2)(B). Similarly, the ICIG should inform the congressional intelligence committees when an investigation "focuses on any current or former *intelligence community official* who" holds certain high-ranking positions, *id.* § 3033(k)(3)(A)(ii) (emphasis added), or when a matter requires a report to the Department of Justice of "possible criminal con-

---

[8] To the extent relevant, the legislative history and statutory findings confirm that the provision relates only to problems within the intelligence community. In giving the ICIG jurisdiction to investigate "intelligence activities" within the DNI's purview, Congress explained that it "believe[d] that an IC/IG with full statutory authorities and independence can better ensure that the ODNI identifies problems and deficiencies *within* the Intelligence Community." H.R. Rep. No. 111-186, at 70–71 (2009) (emphasis added). Similarly, in establishing the "urgent concern" procedures in the IG Act, Congress made clear that the provision was designed to address "wrongdoing *within* the Intelligence Community." Intelligence Community Whistleblower Protection Act of 1998, Pub. L. No. 105-272, tit. VII, § 701(b)(4), 112 Stat. 2396, 2413, 2414 (emphasis added).

duct by [such] a current or former [intelligence-community] official," *id*. § 3033(k)(3)(A)(iii). The ICIG's reporting responsibilities, however, do not concern officials outside the intelligence community, let alone the President.

In this case, the conduct that is the subject of the complaint does not relate to an "intelligence activity" under the DNI's supervision. The complainant alleges that the President made an inappropriate or potentially unlawful request on a routine diplomatic call with the Ukrainian president. But the President is not a member of the intelligence community, *see id*. § 3003(4), and his communication with a foreign leader involved no intelligence operation or other activity aimed at collecting or analyzing foreign intelligence. To the extent that the complaint warrants further review, that review falls outside section 3033(k)(5), which does not charge the ICIG (let alone every intelligence-community employee) with reporting on every serious allegation that may be found in a classified document. To the contrary, where the ICIG learns of a credible allegation of a potential criminal matter outside the intelligence community, the ICIG should refer the matter to the Department of Justice, consistent with 28 U.S.C. § 535.

We recognize that conduct by individuals outside of the intelligence community, or outside the government, can sometimes relate to "the funding, administration, or operation of an intelligence activity." 50 U.S.C. § 3033(k)(5)(G)(i). For instance, if an alleged violation of law involves a non-agency party who conspired with a member of the intelligence community or who perpetrated a fraud on an agency within the DNI's authority, that may well relate to "the funding, administration, or operation of an intelligence activity" because it would directly impact the operations or funding of the agency or its personnel. In 1990, then-Acting Deputy Attorney General William Barr acknowledged similar instances in which inspectors general could investigate "external parties." Letter for William M. Diefenderfer, Deputy Director, Office of Management and Budget, from William P. Barr, Acting Deputy Attorney General, at 2–3 (July 17, 1990). None of those circumstances, however, is present here. The alleged conduct at issue concerns actions by the President arising out of confidential diplomatic communications with the Ukrainian president. Such matters simply do not relate to "the funding, administration, or operation of an intelligence activity within the responsibility and authority" of the DNI. 50 U.S.C. § 3033(k)(5)(G)(i).

### III.

For the reasons set forth above, we conclude that the complaint submitted to the ICIG does not involve an "urgent concern" as defined in 50 U.S.C. § 3033(k)(5)(G). As a result, the statute does not require that the DNI transmit the complaint to the intelligence committees. Consistent with 28 U.S.C. § 535, however, the ICIG's letter and the attached complaint have been referred to the Criminal Division of the Department of Justice for appropriate review.

STEVEN A. ENGEL
*Assistant Attorney General*
*Office of Legal Counsel*